AMERIFIRST SAVINGS BANK OF XENIA, Ohio, Appellee,

v.

KRUG, d.b.a. Krug Auto Sales, et al., Appellants.

[Cite as *Amerifirst Savings Bank of Xenia v. Krug* (1999), 136 Ohio App.3d 468.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 17345 and 17349.

Decided Dec. 10, 1999.

470

474

**476**

*Michael L. Scheier* and *Steven C. Coffaro,* for appellee.

*Jay F. McKirahan* and *Deanna L. Stockamp,* for appellant Jerry Krug, d.b.a. Krug Auto Sales.

*Eugene Robinson,* for appellant Theran Alexander.

*Daniel J. O'Brien,* for appellant Tim Krug.

FREDERICK N. YOUNG, Judge.

In this case, defendants–appellants Jerry Krug, d.b.a. Krug Auto Sales (hereinafter collectively referred to as "Jerry Krug"), Tim Krug, and Theran Alexander appeal from the trial court's judgment entry affirming the jury verdicts and damage awards against them and in favor of Amerifirst Bank of Xenia, Ohio ("Amerifirst"). Each appellant asserts their own respective assignments of error.

The original complaint in this matter was filed on December 21, 1995, by Amerifirst against all three appellants, Jerry Krug, Timothy Krug, and Alexander, with an amended complaint having been filed on May 28, 1997. Amerifirst asserted claims of breach of contract, specific performance, breach of fiduciary duty and negligence against Jerry Krug, and asserted claims of common law fraud and violations of Ohio's RICO statutes against all three appellants. All three appellants filed counterclaims of defamation and intentional infliction of extreme emotional distress against Amerifirst. Jerry Krug asserted an additional claim against Amerifirst for wrongful withholding of dealer reserve funds.

Alexander's original deposition was scheduled for April 11, 1996. On April 10, 1996, Alexander filed a motion for a stay of the deposition proceedings and an order protecting him from the loss of his right against self-incrimination because he was under federal criminal investigation for fraud stemming from the facts underlying this case. The trial judge stayed the proceedings for six days. The motion was never ruled on because no notice of deposition had been filed. On December 30, 1996, Amerifirst issued a notice to depose Alexander on January 23, 1997. On January 17, 1997, Alexander filed a motion for a protective order against testifying at deposition because he was still under federal investigation. After great delay, Alexander's deposition was taken and filed with the trial court on September 9, 1997. In his deposition, Alexander asserted his Fifth Amendment privileges to matters regarding the fraud claim against him.

On March 3, 1997, the trial judge filed an entry setting the jury trial for October 14, 1997, with a back-up trial date scheduled for November 3, 1997. The pretrial order clearly stated that "[u]nder no circumstances will the taking of perpetuation testimony within thirty days of the trial date cause the trial date to be continued." The court filed a revised trial schedule on May 28, 1997, resetting the jury trial for November 10, 1997.

A motion for summary judgment was filed by Amerifirst on September 9, 1997, on the issues of Jerry Krug's breach of fiduciary duty, Alexander and Jerry Krug's fraud claims, and Alexander's and Jerry Krug's defamation counterclaims. Alexander responded on September 26, 1997, by filing a memorandum contra and asserting his own motion for summary judgment. Jerry Krug and Timothy Krug filed a joint memorandum contra and motion for summary judgment on October

10, 1997. On October 20, 1997, the trial court sustained Amerifirst's motion for summary judgment on the issue of appellants' defamation and emotional distress claims. The trial court also granted Amerifirst's motion on the issue that an agency relationship existed between Jerry Krug and Amerifirst; the trial court denied the parties' remaining claims.

On October 30, 1997, Amerifirst filed a motion in limine requesting the trial court to limit Alexander's testimony to matters not previously shielded from discovery through assertion of his Fifth Amendment privilege. This motion was in response to Alexander's request to waive his Fifth Amendment privilege and withdraw his assertion on the eve of trial, six months after asserting the privilege. Alexander filed a memorandum contra on November 5, 1997, however the trial court granted Amerifirst's motion on November 6, 1997, based on Alexander's timing and the "unfair tactical advantage" Alexander would gain by waiving the privilege at that late date.

The jury trial commenced on November 10, 1997. Immediately prior to the start of trial, Alexander filed a motion for continuance and to postpone continuation of depositions of his experts pending the production or reconstruction of Amerifirst's 1995 lending guidelines. The trial court denied the motion for continuance based on Amerifirst's reproduction of the lending guidelines just prior to trial.

The testimony at trial is summarized briefly as follows:

Jerry Krug is the sole proprietor of Krug Auto Sales, a used car dealership located in Beavercreek, Ohio. Tim Krug, Jerry Krug's son, was in charge of Krug Auto Sales' day-to-day business affairs in 1995. Alexander was a sales representative who was an independent contractor for the dealership.

In 1994, Amerifirst developed its indirect consumer lending department and Peter C. Williams was appointed the loan officer in charge of processing indirect loan applications. Under this program, Amerifirst would not have direct contact with the potential borrower, but instead Amerifirst would receive the application from the third-party automobile dealer who would deal directly with the potential borrower.

Amerifirst and Williams initiated contact with Jerry Krug to begin such a program, and Krug Auto Sales began participating in the program in April of 1995. Amerifirst and Jerry Krug entered into a Dealer Agreement on April 19, 1995. The Dealer Agreement provided that Jerry Krug was an "agent for taking loan applications and completing loan documents." In addition, the Dealer Agreement provided that "nothing in this agreement shall be construed to obligate dealer to offer Bank financing to Buyers or to obligate Bank to accept any loan application." Scott Powers, Asset Quality Coordinator for Amerifirst

during 1995, testified that Amerifirst provided a "fee" to Krug Auto Sales for serving as Amerifirst's "agent" and booking the loans through Amerifirst. This money went into a Dealer Reserve account, and between May and August of 1995 the account accrued to $142,437.46.

Despite Jerry Krug's oral agreement with Williams to submit approximately fifty applications per month, Krug Auto Sales submitted an average of over eight hundred applications per month for the period of May through August of 1995, totaling approximately three thousand applications. Williams testified that his lending department was understaffed to handle the volume of applications, and that he was responsible for approving or denying the vast majority of Krug Auto Sales' customers' loan applications. To determine which applications to approve and which to deny, Williams analyzed the potential customers' applications and credit reports using the Amerifirst lending guidelines. Williams testified that each application had to be considered on a case-by-case basis, but that he had a lot of leeway in his decision making. He further testified that the lending guidelines did not allow Amerifirst to rely solely on the customers' applications if their credit reports did not supply the needed information. Two hundred fifty-eight applications submitted through the program with Krug Auto Sales were approved. Williams was eventually terminated from Amerifirst, in part based on his performance with this program.

In August of 1995, Amerifirst began an internal investigation into the increased rate of defaults from its consumer loans, in particular, those approved through the program with Krug Auto Sales. The investigation uncovered inaccuracies on the applications from Krug Auto Sales. These inaccuracies included false information on employment data, including length of time at employment, amount of compensation, and whether or not the customer was even employed; length of time at residence; whether the customer rented or owned their residence; number of dependents; and trade-in and down payment information.

Jerry Krug testified that he personally handled few of the Amerifirst applications. He stated that his salespeople, who were independent contractors, would obtain information from the potential customers, complete the application, and then fax the application to Amerifirst. He instructed all salespeople to accept all applications, explaining that he did not want to discriminate between potential buyers.

Jerry Krug did realize that Amerifirst was approving applications which were not of the quality usually accepted for loan approval by a bank. He stated that Amerifirst was approving so many loans that he could not keep up with the demand for cars. Jerry Krug also testified that he recommended to other car dealers that they deal with Amerifirst because they were "buying bad paper" and that they could increase their sales by dealing with Amerifirst.

Fourteen of the approved borrowers testified at trial. The majority of the customers testified that they supplied truthful information to the salesperson at Krug Auto Sales (usually Alexander), who would fill out their applications. Angela Wolford, one approved customer, testified that she provided truthful information to Alexander as he filled out her loan application, but he entered false information on her application. Wolford, who was unemployed at the time of applying for a loan, testified that Alexander called another individual in the midst of filling out her application, and offered this individual "another $1,000 check" if this person would state to Amerifirst that Wolford worked as his secretary. As a result of that conversation, Wolford stated that her Amerifirst application indicated that she worked for Decoux Enterprises.

In early September of 1995, Amerifirst spoke with Jerry Krug regarding the volume of applications that he had been sending to Amerifirst. Amerifirst addressed the serious ethical questions it had regarding the veracity of the information as contained on the applications. Jerry Krug was asked by Amerifirst to reduce the amount of applications at that time. Very soon after that meeting, Amerifirst notified Jerry Krug that he was in breach of the Dealer Agreement, and the indirect loan program was terminated.

By the time of trial, 166 of the 258 loans from Krug Auto Sales with Amerifirst had defaulted.

On November 22, 1997, the jury rendered a verdict in favor of Amerifirst on its claims of breach of contract, breach of warranty, negligence, fraud and the RICO violations against Jerry Krug in the amount of $743,318.59, and a joint and several verdict of $221,448.74 against Tim Krug and Alexander for the fraud and RICO violations. The jury also found in favor of Jerry Krug's counterclaim of wrongful withholding of the dealer reserve account against Amerifirst in the amount of $33,566.95.

The trial court filed its decision on January 20, 1998, ordering the verdict amounts to be paid as consistent with the jury verdict. On January 23, 1998, Amerifirst filed a motion for approval of a bill of costs totaling $7,957.20. Alexander filed a memorandum contra on January 26, 1998, asserting error in Amerifirst's determination of costs because Amerifirst taxed expenses which were not authorized by statute. This motion was adopted by both Tim Krug and Jerry Krug on February 3, 1998. On February 2, 1998, Alexander also filed a motion for judgment notwithstanding the verdict, a motion for a new trial, and/or a motion to reduce the damages. Tim Krug and Jerry Krug also filed motions for judgment notwithstanding the verdict and/or new trial on February 3, 1998.

On April 14, 1998, Amerifirst filed a revised bill of costs for the amount of $4,024.82. On May 8, 1998, Alexander filed a motion for judgment notwithstanding the verdict or new trial or for a remittitur and to reduce claim for costs. The

trial court approved Amerifirst's revised amount of costs in an entry filed on July 2, 1998. By a separate entry dated also on July 2, 1998, the trial court overruled the Appellants' motions for judgment notwithstanding the verdict, new trial, and/or remittitur.

On July 27, 1998, Alexander filed his notice of appeal. Tim Krug and Jerry Krug filed their notices of appeal on July 28, 1998.

We will first address Jerry Krug's assignments of error.

## I

"Plaintiff's Exhibits 61 and 62, admitted over objection, were based in substantial part on inadmissible hearsay."

In his first assignment of error, Jerry Krug argues that the trial court erred in admitting into evidence Amerifirst's primary evidence of damages, Plaintiff's Exhibits 61 and 62. Plaintiff's Exhibit 61, "Chart of Fraudulent Loan Application Damages," consists of information from thirty-one customers, of which fourteen appeared at trial. Plaintiff's Exhibit 62, "Chart of Amerifirst Damages for All Claims," similarly contains twenty-five names from Exhibit 61, of which seventeen did not appear at trial. These exhibits were admitted into evidence because they were in the form of a summary and admissible under Evid.R. 1006 and 803(6) as a business records exception. Jerry Krug's trial counsel objected generally to the exhibits, however on appeal he now contends they contained inadmissible hearsay under Evid.R. 805.

Under Evid.R. 103(A)(1), a party's objection to testimony must specify the grounds for the objection unless the specific ground is apparent from the context. Evid.R. 103(A)(1). In this case, trial counsel did not object to the admission of Exhibits 61 and 62 on the basis of hearsay, but rather stated his concerns that the word "Fraudulent" was used in the title of Exhibit 61; then he proceeded to express some concerns that the calculated damages in the exhibits had already been paid by the customers, thus Amerifirst was attempting to "double dip" and this would prejudice Jerry Krug.

Although Jerry Krug did object to the admission of both exhibits, he never raised hearsay as a basis for the objections until this appeal. Because he did not raise the hearsay objections at a time when the documents could be cured, he waives any claim of error. *State v. Sibert* (1994), 98 Ohio App.3d 412, 423, 648 N.E.2d 861, 867–868; *Grand Trunk Western R.R. v. Cothern* (Mar. 17, 1995), Lucas App. No. L–93–112, unreported, 1995 WL 112908 (hearsay objection waived on appeal when basis for objection at trial was improper redirect); *State v. Rapp* (Jan. 12, 1994), Ross App. No. 1912, unreported, 1994 WL 8296; *State v. Cotton* (Mar. 18, 1993), Cuyahoga App. No. 62105, unreported, 1993 WL 101819.

We are unconvinced by Jerry Krug's argument that he objected to the use of hearsay evidence indirectly when he objected to Scott Powers' testimony concerning the authentication of the documents. It is unclear that hearsay was the basis for that objection, and the basis for the objection dealt with testimony relating to the conclusion of his investigation, and not specifically relating to the preparation of the exhibits. Additionally, no hearsay objection was made when the exhibits were admitted into evidence, thus error was waived. *Genesis Respiratory Services, Inc. v. Hall* (1994), 99 Ohio App.3d 23, 30–31, 649 N.E.2d 1266, 1270–1271.

■ However, even if Jerry Krug had not waived this alleged error, we cannot say that admission of these exhibits prejudiced him. Powers testified at length regarding his investigation into the defaults of consumer loans made through Krug Auto Sales. Powers also provided a detailed explanation of how he created the exhibits, including how he obtained and evaluated the information to arrive at the data in both exhibits. Powers provided a thorough evaluation of the information summarized in the exhibits, and properly provided the foundation for the documents in his testimony. During this testimony, Jerry Krug did not object. As such, any error committed by allowing the documents to be admitted was harmless.

We hold that the trial court did not abuse its discretion in admitting exhibits 61 and 62 into evidence and their admission did not amount to plain error. Jerry Krug's first assignment of error is overruled.

## II

"Jerry Krug and Krug Auto Sales were not agents of the Appellee or, to the extent that Jerry Krug and Krug Auto Sales were agents of the Appellee, the relation was a severely limited agency and did not excuse the bank from exercising ordinary care."

■ In his second assignment of error, Jerry Krug contends that the evidence submitted by Amerifirst was legally insufficient to establish the existence of an agency relationship between Jerry Krug and Amerifirst. Jerry Krug argues that, despite the language contained in the Dealer Agreement, he was not authorized to "bind the bank" and obligate Amerifirst to finance the potential borrower. Jerry Krug argues that even if an agency relationship did exist, it was for a very limited purpose and thus there existed a very limited duty owed to Amerifirst by Jerry Krug.

In its decision granting summary judgment on the issue of agency, the trial court focused on the use of the word "agency" within the Dealer Agreement. Based on the plain language of the agreement, the trial court interpreted the

"agency" relationship in a literal sense. However, the trial court did not address the issue of whether this relationship satisfied the elements of an agency relationship, and in particular, whether Amerifirst had the right to control Jerry Krug and his employees, even in the limited scope of accepting loan applications.

Preliminarily, we note that an appellate court conducts a *de novo* review of a trial court's grant of summary judgment. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245. *"De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, 1026, citing *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 356–357, 413 N.E.2d 1187, 1190–1191. In other words, we review the trial court's decision without according it any deference. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158.

Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; Civ.R. 56(C). The burden is on the movant to show that no genuine issue of material fact exists. *Id.* Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant. Keeping these principles in mind, we proceed first to consider whether the trial court's grant of summary judgment in Amerifirst's favor on the issue of the existence of an agency relationship was appropriate.

In general, an agency relationship is a contractual relationship created by an express or implied agreement between the parties. *Johnson v. Tansky Sawmill Toyota, Inc.* (1994), 95 Ohio App.3d 164, 642 N.E.2d 9. "The test of whether a person is the agent of another is the *right of control* of one over the other." (Emphasis added.) *Rudy v. Bodenmiller* (Dec. 11, 1990), Miami App. No. 89 CA 54, unreported, 1990 WL 205109. The *Rudy* court went on to state

that if an agency relationship does exist, "it will be an agency whether the parties understand the exact nature of the relation or not, and the mere use of the word 'agency' by the parties and their contract does not have the effect of making one an agent who under the law is not an agent." *Id.* citing 3 Ohio Jurisprudence 3d, Agency, Sections 18, 19.

In reviewing the record, we are unconvinced that this relationship was that of an agent and principal. Amerifirst produced no evidence that Jerry Krug's relationship with Amerifirst satisfied the elements of an agency, except for the fact that the word "agency" was included in the agreement in an attempt to define the relationship. In construing the evidence in this case in favor of Jerry Krug, the nonmoving party, we find that material issues of fact did exist as to the status of Jerry Krug's relationship with Amerifirst. There was no evidence that under this Dealer Agreement, Amerifirst had the right to control Jerry Krug in the performance of the agreement. No control was exerted in terms of the details of the acceptance of the applications, thus Jerry Krug was able to accept his applications according to his own methods. Instead, we find evidence that Jerry Krug may have been an independent contractor, despite the use of the word "agent" in the agreement.

This right of control must again be reviewed in determining if an individual is an independent contractor or an agent. *Newcomb v. Dredge* (1957), 105 Ohio App. 417, 420, 6 O.O.2d 178, 179–180, 152 N.E.2d 801, 804–805. This court explained the contrasting relationship in *Newcomb:*

"A principal has the right to control the conduct of his agent with respect to matters entrusted to him, whereas the independent contractor is subject to control in the performance of the contract only as to the result. * * * An independent contractor is defined as one who in the exercise of an independent employment contracts to do a piece of work according to his own methods, and without being subject to the control of the employer except as to the product or result of his work. If power of control over the work is reserved, the actor is either an agent or a servant, and to make him an agent it is only necessary that the principal have the power of control; the mere fact that the principal does not exercise control over his agent, but chooses to leave details of the work to the latter's discretion, does not alter the relation of the parties, or make the agent an independent contractor * * *." *Id.* at 420, 6 O.O.2d at 180, 152 N.E.2d at 804–805, quoting 2 Ohio Jurisprudence (2d), 39, Section 5.

The test of whether an individual is an agent or an independent contractor is usually a question for the trier of fact. *Westfield Ins. Co. v. Reitler* (Feb. 4, 1994), Crawford App. No. 3–93–16, unreported, 1994 WL 43856. See, also, *Bennett v. Sinclair Refining Co.* (1944), 144 Ohio St. 139, 149, 29 O.O. 223,

227, 57 N.E.2d 776, 781 (question of legal relationship of parties was properly a question of fact). However, when the facts are not in dispute, the trial court is permitted to grant summary judgment. *Id.* See, also, *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146–147, 524 N.E.2d 881, 883–885.

However, since this argument was not set forth by Jerry Krug in his motion for summary judgment, we cannot rule that the relationship was in fact that of an independent contractor. Instead, this issue should have been determined by the trier of fact.

In conclusion, we find that when the evidence is construed in a light most favorable to Jerry Krug, material factors are genuinely in dispute regarding whether Jerry Krug and his employees were agents of Amerifirst or whether they were independent contractors, and thus whether Jerry Krug owed and breached a fiduciary duty to Amerifirst. As such, the trial court erred when it granted Amerifirst's motion for summary judgment regarding the issue of the existence of an agency relationship. Instead, this issue is one that should have been submitted to the trier of fact for a determination as to whether an agency relationship did in fact exist between Amerifirst and Krug Auto Sales.

For the foregoing reasons, summary judgment on this issue was inappropriate, Krug's assignment of error is sustained and the judgment of the Montgomery County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

## III

"The trial court committed error by overruling these Appellants' motion [sic] to sever the trials of these Appellants from the trial of Theran Alexander."

In his third assignment of error, Jerry Krug asserts that the trial court's denial of his motion to sever resulted in reversible error because of the significant negative impact resulting from Alexander's invocation of his Fifth Amendment privilege. We do not agree.

The determination of a motion to bifurcate claims or issues for trial lies within the sound discretion of the trial court. Civ.R. 42(B); *Heidbreder v. Northampton Twp. Trustees* (1979), 64 Ohio App.2d 95, 18 O.O.3d 78, 411 N.E.2d 825. The term "abuse of discretion" connotes more than a mere error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

In ruling on the motion at trial, the trial court noted that Alexander invoked his Fifth Amendment privileges on February 4, 1997. At the end of February, 1997, the trial was scheduled for October of 1997. On May 28, 1997, the trial was rescheduled to November 10, 1997, and it was understood by all parties that there would be no further continuances. In both trial date-setting entries, the trial court explicitly stated that no continuances would be granted based on late-date depositions. Furthermore, in the decision overruling the motion to sever, the trial judge stated that the Krugs had two separate trial setting dates during which they could have brought the issue to the court's attention, but they had not. Had they filed the motion earlier, back to back trials could have been scheduled. Instead, the motion to sever was not filed until November 7, 1997, three days prior to the start of trial.

We agree with the trial court's decision. Because Jerry Krug passed on several trial setting opportunities to request a severance, and because instead he waited until the eve of trial, we find that the trial court did not abuse its discretion in deciding to overrule Jerry Krug's motion to sever. As such, Jerry Krug's third assignment of error is overruled.

## IV

"The jury's verdict with respect to any damages to be awarded is against the manifest weight of the evidence and is based upon facts not in evidence or upon inadmissible hearsay."

In his fourth and final assignment of error, Jerry Krug claims the jury verdict with respect to the damages assessed against him was against the manifest weight of the evidence. Before we address the merits of his argument, we note that in weight of the evidence challenges, an appellate court " 'review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721.

Although *Thompkins* permits a reviewing court to consider the credibility of witnesses when addressing a weight of the evidence challenge, we nevertheless accord substantial deference to a fact finder's decision as to which testimony to credit, and to what extent to do so. *State v. Lawson* (Aug. 22, 1997),

Montgomery App. No. 16288, unreported, 1997 WL 476684. Furthermore, "the determination of the amount of damages is within the discretion of the trial court, and will be sustained if it is supported by sufficient credible evidence and is not against the manifest weight of the evidence." *Hamilton v. Abcon Construction* (Nov. 24, 1997), Warren App. No. CA97–03–027, unreported, 1997 WL 727641. Bearing this in mind, we proceed to the merits of Jerry Krug's assigned error.

Preliminarily, consistent with our determination that a trial on the issue of the existence of an agency relationship between Jerry Krug and Amerifirst is warranted in this case, Jerry Krug's assigned error regarding the weight of the evidence of the damages verdict for breach of fiduciary duty is moot. We will now discuss the other parts of this assignment of error.

■■■ Jerry Krug argues that no evidence in the record exists to support the damages verdict against him for material breaches of warranty. The focus of this argument is that under the Dealer Agreement, in particular paragraphs 7 and 8, the only time loan proceeds should be charged back to the dealer is if there exists a material breach of representation or warranty. Jerry Krug argues that there was no evidence of a material breach of warranty by the very language of the dealer agreement, since a payoff, repossession, or a charge off to bad debt is not considered a material breach. He bases this argument on the fact that these events are not categorized as "representations and warranties" under the dealer agreement, but instead are set off as separate items to be charged back against the dealer's reserve account. Furthermore, out of the 165 files contained in Exhibit 62, only fourteen people testified to the presence of fraudulent information in their applications. No evidence was presented as to the remaining files, thus no evidence of material breach was proven regarding these remaining files. As such, the damages verdict is against the manifest weight of the evidence.

We find merit in this assignment of error. The paragraphs at issue in the Dealer Agreement read as follows:

"7. In the event that a loan obtained pursuant to this agreement pays off, is repossessed, or is charged off to bad debt loss prior to its first anniversary, the fees will be charged back against the dealer on a straight line basis.

"8. In the event of any material breach in the above Dealer warranties and representations, or in the event of any litigation regarding breach of Dealer's sales or service warranties, whether Bank is made a party or not, Dealer shall promptly purchase any note or notes which are affected by said breaches and shall promptly pay to the Bank the net amount then remaining unpaid, but such obligation on Dealer's part shall not preclude Bank from enforcing any other remedies available because of such breach * * *."

We interpret paragraph 7 of the Dealer Agreement to indicate that if a loan is paid off, charged off, or if the automobile is repossessed for any reason, either by the fault of the customer or the Dealer, prior to the first year anniversary, the "fees" will be charged back against the Dealer's reserve account established by Amerifirst for Jerry Krug. However, paragraph 8 is more specific. It deals with material breaches of warranties or representations on behalf of the Dealer as listed under paragraphs 2 and 3 of the Dealer Agreement. If such a breach should occur, the language specifically provides for the dealer to purchase the notes affected by the breach, and does not simply assess the Dealer the fees. We find that these "fees" under paragraph 7 are distinct from the "notes" in paragraph 8.

In this case, it is clear that material breaches of the warranties listed in paragraphs 2 and 3 occurred in the fourteen customers' loan applications. However, after a thorough review of the record, we agree with Jerry Krug that no evidence was presented to the jury as to any material breach causing the remaining one hundred sixty-one loans to go into default or repossession. Further, Amerifirst fails to point to any portion of the transcript wherein evidence of these damages could be found. As such, Jerry Krug should not be held responsible to purchase the notes of the remaining one hundred sixty-one loans, but it would be a fair interpretation from the Dealer Agreement to charge back the fees against the reserve account.

However, confusion exists in the verdict itself. Jerry Krug was assessed the total of $743,318.59 in damages for all of the claims against him. At issue in this assignment of error are the damages assessed for the claim for breach of warranty only. To the extent that these damages were awarded for the breach of warranty claim, we find that they are not supported by the evidence. But, given the general form of the jury's verdict, we cannot determine if the damages were based on the breach of warranty claim or if they were based on the remaining claims.

Jerry Krug indicates that this excessive damages verdict must stem from this breach of warranty claim based on the calculation of damages as evidenced in Exhibit 62. However, that is not clear from the record. Exhibit 62 demonstrated that Amerifirst sustained total damages in the amount of $1,410,987.14. Of this amount, the jury assessed $221,448.74 jointly and severally against Alexander and Tim Krug. Of the remaining $1,189,538.40, the jury assessed a general verdict of $743,318.59 to Jerry Krug.

With respect to the breach of warranty claim, we find that the verdict is unsupported by the evidence in the record. Because it is unclear from the record which portion of the damages verdict accords with Amerifirst's breach of warran-

ty claim, we must remand the case to the trial court for a determination of the damages as consistent with this opinion.

Jerry Krug's fourth assignment of error is hereby sustained with respect to the breach of warranty claim.

Jerry Krug's assignments of error are sustained in part and overruled in part.

We will now address Timothy Krug's assignments of error [1]. For ease of organization, we will address these assignments of error out of order.

## II

"The defendants-appellant, Jerry Krug and Tim Krug were denied a fair trial and the court below committed prejudicial error when it failed to grant the motion of these defendants-appellant to sever their case from that of the co-appellant, Theran Alexander, with the trial court's prejudicial and erroneous decision not to permit Mr. Alexander to complete his deposition after it had been represented by the plaintiff through counsel that Mr. Alexander would be permitted to complete his deposition and defendants Jerry and Tim Krug relied on said representation and were forced to participate in a trial wherein the plaintiff claimed that the defendants had jointly and severly [sic] committed fraud against this plaintiff thereby depriving these defendants of a fair trial."

Based on our decision in Jerry Krug's third assignment of error, we overrule this assignment of error.

## III

"The court below prejudicially erred to the detriment of the Defendants–Appellant, Jerry Krug and Tim Krug, in failing to direct a verdict in favor of these Defendants at the close of the Plaintiff's case and the close of all the evidence with reference to the contract count predicated upon liability under the dealership agreement (Plaintiff's Exhibit '52')."

In this somewhat unorganized assignment of error, Tim Krug's appellate counsel argues that the trial court erred in failing to direct a verdict in favor of Tim Krug and Jerry Krug regarding the breach of contract and breach of fiduciary duty claims. However, Amerifirst never asserted any breach of contract or breach of fiduciary duty claims against Tim Krug, thus Tim Krug has no standing to attack this issue. As such, the assignment of error is moot, and is hereby overruled.

---

1. As addressed during oral arguments before this court, Tim Krug's assignments of error apply only to him and not to Jerry Krug, who is represented by separate appellate counsel.

IV

"The court below prejudicially erred in submitting to the jury the issue of fraud as to Tim and Jerry Krug and in failing to sustain Krugs [*sic*] motion of February 3, 1998 for judgment N.O.V. or for a new trial."

In this assignment of error, Tim Krug contends that the trial court erred in failing to grant him a judgment notwithstanding the verdict on the issue of his liability to Amerifirst for fraud, because of the lack of evidence that Tim Krug did commit any fraud on Amerifirst. Although his brief is very unclear, we further interpret Tim Krug's assertion that it was error for the trial court to overrule his motion for a new trial because the only evidence of fraud was Plaintiff's Exhibits 61 and 62, which were based on inadmissible hearsay.

We will first address Tim Krug's contention that the trial court erred in overruling his motion for judgment notwithstanding the verdict. Under Civ.R. 50(B), where there has been a verdict in favor of the plaintiff, the Supreme Court of Ohio has held that the standard of review of a ruling on a motion for judgment notwithstanding the verdict is the same as that to be applied to a motion for a directed verdict. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334. The standard is set out in *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 522 N.E.2d 511, as follows:

"The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." See, also, *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467.

In applying this standard to the case before us, we must review the evidence in the record relating to the fraud claim against Tim Krug. The elements of an action sounding in fraud are as follows:

"(a) a representation or, where there is a duty to disclose, concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance." *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus.

 In its brief, Amerifirst argues that two witnesses testified at trial to Tim Krug's participation in the fraudulent activity. The first of such witnesses, Trinity Kersey, testified that "Nick" at Krug Auto Sales filled out his application and indicated that he had been working at his then-current place of employment for one year, when in fact Kersey told Nick that he had been working there only a month and a half. On Re-cross Examination, Kersey explained that Nick had filled out this questionable part of the application, and upon notifying Tim Krug about the discrepancy, Tim Krug "rolled his eyes and continued on with the paper."

The second witness was Jerome Pettigrew, whose testimony revolved around the disappearance of $400 for insurance money that Pettigrew had given to Tim Krug.

Amerifirst also claims that the trial court did not err in finding evidence of fraud in Tim Krug's testimony. Tim Krug stated that he was at the dealership "all the time," and that he primarily was in charge of the dealership between April of 1995 and September of 1995 while Jerry Krug was away. He also testified that he believed Amerifirst was "a lot more lenient" in its lending than that of other banks.

In its decision denying Tim Krug's motion for judgment notwithstanding the verdict, the trial court found that, construing the evidence most strongly in favor of Amerifirst, there was support for the verdict against Tim Krug, as evidence did exist that he committed an act of fraud against Amerifirst when he acted in reckless disregard for the truth. The trial court stated the following:

"The evidence presented was that Tim Krug ran the daily operations of Krug Auto Sales while Jerry Krug was away, approved all the deals made and was aware that sales increased fourfold over the prior year's sales in just a few months. These facts presented sufficient evidence that Tim Krug at least knew about the scheme to defraud Amerifirst by submitting falsified loan applications."

We cannot find that the evidence adduced at trial supported a finding of fraud on behalf of Tim Krug. There is no evidence that Tim Krug concealed a fact material to a transaction with Amerifirst regarding their indirect loan program, nor does there exist evidence that he misrepresented a material fact during a transaction with Amerifirst. The incident regarding Kersey's application did not rise to the level of a fraudulent misrepresentation. We are unconvinced that this whole line of testimony goes to any proof that Tim Krug committed any fraud against Amerifirst. Furthermore, simply because Tim Krug was primarily in

charge of Krug Auto Sales during the period in question does not make him aware of the misrepresentations on the applications or even prove reckless disregard in failing to alert Amerifirst to these occurrences. To the contrary, no knowledge of falsity or recklessness thereof on behalf of Tim Krug was proven, and there is no evidence in the record that Tim Krug had the intent to mislead Amerifirst in any of his dealings with the bank.

Construing the evidence most strongly in favor of Amerifirst, we find that substantial evidence does not exist to support Amerifirst's claims against Tim Krug. The jury could not have reasonably concluded that Tim Krug committed any act of fraud against Amerifirst, thus we find error in the trial court's decision overruling Tim Krug's motion for judgment notwithstanding the verdict. As such, his argument that the trial court erred in overruling his motion for a new trial is moot. We thus sustain Tim Krug's assignment of error.

## I

"The Defendants–Appellant, Jerry Krug and Tim Krug, were denied a fair trial and the court below committed prejudicial error when it failed to grant the motions of these Defendants–Appellant to continue this case because of the Plaintiff's willful failure to produce the most significant document (loan guidelines) required by the Defendants for their defense of this cause, representing on three separate occasions to counsel for the Defendants that the document did not exist, represented to the Court on the day of the Trial that the document did not exist and after the commencement of the Trial, brought forth the document."

## V

"The Court committed prejudicial error when it refused to allow the Defendants Krugs expert, Mr. Glenn Wells, to testify that as to the 258 applications in general as well as the 33 delineated in Defendants exhibit 'FF'. None were credit worthy under the Plaintiff's own guidelines. [Sic.]"

## VI

"The Trial Court committed prejudicial error as a matter of law in its assessment of the costs of this action for depositions that were not used in this Trial in portions of the daily trial transcript to assist at the Trial as the cost of this action."

## VII

"Based upon the totality of all the prior Assignments of Error and the ensuing prejudice from each and every one of them taken as a whole, it is respectfully submitted that the Defendants in this cause did not receive a fair trial."

In view of our decision in Tim Krug's fourth assignment of error, his first, fifth, sixth and seventh assignments of error are overruled as moot.

Tim Krug's assignments of error are sustained in part and overruled in part. The trial court's judgment against Tim Krug is reversed.

Finally, we will address Theran Alexander's assignments of error.

I

"The trial court abused its discretion by imposing a preclusion sanction against Defendant Theran Alexander precluding his testimony on all issues going to the merits of the action for fraud because he exercised his privilege against self-incrimination at a pre-trial deposition to prevent the use of such testimony by federal investigators conducting a parallel criminal investigation concerning the same issues because Plaintiff did not seek an order compelling Defendant to answer questions before seeking the order for sanctions."

■ Alexander's first assignment of error asserts that because there was not an outstanding court order to compel him to testify, his request on the eve of trial to waive his previously asserted Fifth Amendment privilege against self-incrimination should have been granted. As such, Alexander argues that the trial court abused its discretion in refusing his request to do so.

Alexander's deposition was scheduled for April 11, 1996. On April 10, 1996, Alexander filed a motion for a protective order and a stay of the civil litigation based on the pending federal grand jury investigation of his conduct which formed the basis for Amerifirst's civil claims. The trial court stayed the proceedings to allow the parties to respond to the motion. The trial court did not rule on the motion because no notice of deposition had been filed and therefore the issue was moot. On December 30, 1996, Amerifirst issued notice for deposition of defendant on January 23, 1997, to which Alexander filed a motion for protective order on January 17, 1997.

By agreement of the parties, Alexander's deposition was taken on February 4, 1997, during which he asserted his Fifth Amendment privilege concerning the allegations of falsification of Amerifirst applications. On the record at Alexander's deposition, Amerifirst noted through counsel, Mr. Schierer:

"Well, we intend to use the assertion of the Fifth Amendment privilege to gain the negative inference that we're entitled to under the civil law. To the extent that Mr. Alexander chooses to resubmit to questioning and waive his Fifth Amendment privilege and answer the questions we certainly would provide him with the opportunity to do that, as we've represented to you in the past and to Mr. Alexander in the past, and as we have represented to the court."

On September 26, 1997, Alexander filed an affidavit submitted along with his motion for summary judgment, addressing questions in some of the areas he previously declined to discuss based on the invocation of his Fifth Amendment privilege. In response, on October 30, 1997, Amerifirst filed a motion in limine for the trial court to limit Alexander's trial testimony to matters which he had not previously shielded from discovery through assertion of his Fifth Amendment privilege. The trial court sustained Amerifirst's motion on November 6, 1997, stating that the "eleventh hour" waiver would unfairly prejudice Amerifirst and would provide Alexander with a tactical advantage. Additionally, the trial court noted that the affidavit attached to his motion for summary judgment would not be allowed to serve as a waiver for purposes of testifying at trial because that affidavit would also qualify as an "eleventh hour" waiver as well. Alexander argues that the trial court's decision was an abuse of discretion.

We agree with the trial court. The Fifth Amendment to the United States Constitution that provides "no person * * * shall be compelled in any criminal case to be a witness against himself," also applies to civil proceedings. *Lefkowitz v. Turley* (1973), 414 U.S. 70, 77, 94 S.Ct. 316, 321, 38 L.Ed.2d 274, 281. In civil proceedings, the amendment prohibits the state from compelling a witness to testify as to matters which may tend to incriminate in subsequent proceedings. *McCarthy v. Arndstein* (1924), 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158. This issue was addressed in *Gutierrez–Rodriguez v. Cartagena* (C.A.1, 1989), 882 F.2d 553. In *Cartagena*, the court found that the district court did not abuse its discretion when it disallowed a waiver of defendant Pedro Soto's Fifth Amendment privilege. Similar to the case at bar, Soto appeared for his deposition and asserted his Fifth Amendment privilege when asked questions about the shooting. The trial court granted the plaintiff's motion in limine barring Soto's testimony at trial since he asserted the privilege during discovery. The court stated in pertinent part:

"The district court's decision to bar Soto from testifying at trial due to his previous refusal to testify during discovery is supported by ample precedent. " * * *

"We find the principles enunciated by the [Supreme Court in *Williams v. Florida* (1970), 399 U.S. 78, 80, 90 S.Ct. 1893, 1894–1895, 26 L.Ed.2d 446, 449] instructive in the case at bar. Soto made his decision not to give deposition testimony on August 24, 1987 and held that position throughout the next six months prior to trial. The district court's decision to bar Soto's testimony did not burden his due process rights, it merely forced him to abide by his decision and protected plaintiff from any unfair surprise at trial. A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery

only to impale her accusers with surprise testimony at trial." *Id.* at 576–577. The court ultimately found that the trial court did not abuse its discretion in not permitting Soto to testify at trial.

Based on this reasoning, we find that the trial court did not abuse its discretion in granting Amerifirst's motion and in not permitting Alexander to testify at trial.

Alexander's first assignment of error is overruled.

## II

"The trial court committed prejudicial error by overruling Alexander's motion for judgment notwithstanding the verdict and/or for a new trial because Plaintiff failed to show any objective corroboration that it did rely on the alleged fraud."

In this assignment of error, Alexander asserts that the trial court erred in overruling his motion for judgment notwithstanding the verdict because Amerifirst's reliance upon the fraudulent credit applications was not justified as a matter of law. The trial court found that because of the agency relationship between Amerifirst and Krug Auto Sales, Alexander, as an agent of Krug Auto Sales, was a fiduciary to Amerifirst, and therefore was required to make full disclosure of facts to Amerifirst as a matter of law. Although we disagree with the trial court's reasoning that an agency relationship did in fact exist between Amerifirst and Krug Auto Sales, as addressed in Jerry Krug's second assignment of error, we agree with the trial court's decision overruling Alexander's motion. We find that, construing the evidence most strongly in favor of Amerifirst, reasonable minds could have come to different conclusions regarding whether the elements of fraud were met, and thus the trial court was correct in denying Alexander's motion for judgment notwithstanding the verdict.

It is indisputable that Alexander made material, false representations to Amerifirst on many of the applications. No argument exists that these false representations were made with the intent of misleading Amerifirst to rely on the information. The issue in conflict is whether or not Amerifirst *justifiably relied* on the information provided in the applications. "The question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties." *Crown Property Dev., Inc. v. Omega Oil Co.* (1996), 113 Ohio App.3d 647, 657, 681 N.E.2d 1343, 1349. Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances. *Lepera v. Fuson* (1992), 83 Ohio App.3d 17, 26, 613 N.E.2d 1060, 1065–1066. However, there must be a balance between reliance and responsibility:

"The rule of law is one of policy and its purpose is, while suppressing fraud on the one hand, not to encourage negligence and inattention to one's own

interests. There would seem to be no doubt that while in ordinary business transactions, individuals are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary." (Citations omitted.) 50 Ohio Jurisprudence 3d (1984), Fraud and Deceit, Section 132.

With these limitations in mind, we agree with Amerifirst's interpretation of the Supreme Court's definition of justifiable reliance, as contrasted to reasonable reliance, in *Field v. Mans* (1995), 516 U.S. 59, 70–71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351, 362:

■ "Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Restatement of the Law, Torts (1976), Section 545A, Comment *b*.

■ In evaluating whether or not Amerifirst justifiably relied on Alexander's false representations, we do find that there is ample evidence in the record to support the jury verdict. Pete Williams testified that approximately 3,000 applications were submitted by Krug Auto Sales for approval during April of 1995 through September of 1995. Of those 3,000 applications, 258 were approved for financing. In evaluating these applications, Williams or another member of the indirect loan program would follow Amerifirst's guidelines, trying to maintain the credit policies of Amerifirst. No application was approved without first analyzing the information as contained on the application and credit report, then analyzing that information according to the guidelines. Williams testified that the guidelines were "general in nature" and provided a great deal of leeway for the lending officer to compare different factors in their determination as to whether or not an applicant should be denied or extended credit.

Williams also stated that in the indirect financing industry, the lender relies heavily upon the dealer, because they are the ones who see and speak with the customer. The dealer asks the questions, gathers the information from the customer, and as a result a lot of trust is placed in the dealer or the dealership personnel for the bank to make its credit decisions. As a result, approval of these loans was based on these false representations being sent over from Krug Auto Sales on the applications. Based on Williams' many years of experience in the indirect lending industry, he stated that his reliance was reasonable in the industry.

Amerifirst's expert witness, John Burdiss, testified that in a "perfect world" an indirect loan officer would verify the accuracy of every piece of information on a credit application. In reality, Burdiss stated, that is not practical. He stated that it is justified in the industry to rely on the veracity of the information as contained in the credit applications, thus operating on the assumptions that "people generally tell the truth." Burdiss testified that based on his many years of experience in the banking and indirect lending industry, Amerifirst did exercise commercially reasonable judgment in approving the 258 out of 3,000 loans submitted to it by Krug Auto Sales.

The record does contain contradictory evidence to the testimony of Williams and Burdiss. However, under the standard of Civ.R. 50(B), without weighing the evidence or the credibility of the witnesses, and in construing the evidence strongly in Amerifirst's favor, probative evidence did exist in which to permit reasonable minds to come to different conclusions as to the issue of justifiable reliance. Thus, from our review of the record, we find that there is competent and credible evidence to support the trial court's decision overruling Alexander's motion for judgment notwithstanding the verdict.

At the end of this assignment of error, Alexander claims error in the trial court's instruction to the jury that Alexander owed Amerifirst a fiduciary duty. Nowhere in the record do we see this instruction. The claim of breach of fiduciary duty was specific to Jerry Krug. This portion of the assignment of error is overruled.

Alexander's second assignment of error is overruled.

### III

"The exclusion of opinion testimony of Alexander's expert witness at the trial was plain error and unfairly prejudicial where the expert could not adequately review plaintiff's credit files because plaintiff refused to produce its lending guidelines before the first day of trial and conducted a deposition of the expert after the trial began to effectively interfere with the experts' trial preparation." [2]

■ At trial, Alexander's expert witness, Michael Rooths, was not permitted to offer opinion testimony regarding Amerifirst's commercial reasonableness in

---

2. On April 27, 1999, this court granted Alexander's motion to amend the assignment of error portion of his brief to include an additional assignment of error that he mistakenly left out when typing that portion of the brief. This was done with the understanding that the substance of Alexander's original brief filed on April 12, 1999 would remain. However, upon reading both the original brief and the amended assignment of error portion of his brief, we have discovered that the two cannot be reconciled. Thus, for purposes of this appeal, we will assume that the substance of the brief is controlling and will follow the remaining assignments of error as they appear in the original brief.

approving loan applications because Alexander did not disclose this opinion during discovery. Alexander now claims that it was plain error for the trial court to limit Rooths' testimony to matters in which he was deposed. He also asserts that plain error occurred because he was not permitted to supplement his deposition testimony after Amerifirst's lending guidelines were produced just prior to trial. Additionally, Alexander claims that the trial court should have permitted the testimony because only a "nuance of a difference" existed between the proffered testimony and the deposition testimony.

In its decision overruling Alexander's motion for a new trial, the trial court noted that Rooths had been deposed twice, with the second deposition occurring the weekend preceding the trial. During the second deposition, Amerifirst's counsel expressly asked Rooths to disclose the opinions to which he intended to testify at trial, but Rooths did not disclose any opinion on "commercial reasonableness." Alexander disclosed only that Rooths was going to testify as to the applications he would have approved and which he would have denied, but he made no mention of testimony regarding the commercial reasonableness of Williams' conduct in applying the guidelines to the applications and approving the loans. In fact, Rooths expressly stated during the trial that he never heard of the term "commercially reasonable."

Civ.R. 26(E), provides, in relevant part:

"A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.

"(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response."

In deciding to preclude Rooths' testimony, the trial court relied on our decision in *Walker v. Holland* (1997), 117 Ohio App.3d 775, 785–786, 691 N.E.2d 719, 725–726, which stated in pertinent part:

"In *Waste Mgt. of Ohio, Inc. v. Mid–America Tire, Inc.* (1996), 113 Ohio App.3d 529, 681 N.E.2d 492, we noted that the purpose of Civ.R. 26(E)(1)(b) is to prevent 'trial by ambush.' As a result, we reasoned that '[i]f discovery is to serve its purpose, the parties must be entitled, upon the unveiling of a contention, to a reasonable opportunity to prepare to defend against it.' *Id.* at 533, 681 N.E.2d at 495, citing *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio

St.3d 367, 371, 28 OBR 429, 432, 504 N.E.2d 44, 48. Consequently, '[a]lthough Civ.R. 26(E)(1)(b) does not require a party to give an opposing party notice of every nuance of an expert's opinion, it does require supplementation of the subject matter on which an expert is expected to testify.' *Waste Management, supra,* at 533, 681 N.E.2d at 494–495, citing *Tritt v. Judd's Moving & Storage, Inc.* (1990), 62 Ohio App.3d 206, 211–212, 574 N.E.2d 1178, 1182–1183. Furthermore, in *Shumaker,* the Ohio Supreme Court explained that an objective of Civ.R. 26(E)(1)(b) 'is to provide opposing counsel with updated and complete discovery regarding the substance of expert testimony. This duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced.' *Shumaker, supra,* 28 Ohio St.3d at 370, 28 OBR at 431, 504 N.E.2d at 47."

Because Rooths did have the opportunity to give deposition testimony regarding the guidelines and the commercial reasonableness of Williams, but chose not to do so, Amerifirst did not hinder Alexander's trial preparation as he has asserted in this assignment of error. We also find that the proffered testimony was significantly different from his testimony offered during discovery, yet Alexander did not supplement counsel with the substance of this testimony. Therefore, the trial court did not err in its decision, and no plain error resulted.

For the above-mentioned reasons, this assignment of error is overruled.

## IV

"The trial court's refusal to order a remittitur of the damage verdict against Alexander was plain error where the verdict was not supported by competent evidence."

In his fourth assignment of error, Alexander claims that the jury verdict against him was excessive, thus the trial court abused its discretion by not granting his motion for remittitur. Alexander claims that $175,785.56 of his damage amount is unsupported by sufficient and competent evidence in the record. It is Alexander's contention that the verdict was influenced by passion or prejudice because of Alexander's inability to testify along with the jury charge regarding his silence and because of the hearsay testimony of Scott Powers. He also claims that the verdict was against the manifest weight of the evidence.

"The assessment of damages is a matter within the province of the jury." *Carter v. Simpson* (1984), 16 Ohio App.3d 420, 423, 16 OBR 490, 493–494, 476 N.E.2d 705, 708. It is not proper for the reviewing court to substitute its opinion for that of the jury. *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 44, 25 OBR 115, 117–118, 495 N.E.2d 462, 464–465. The denial of a motion for

remittitur is not erroneous unless the award is so excessive as to appear to be the result of passion or prejudice on the part of the jury, or unless the amount awarded is against the manifest weight of the evidence. *Id.* To reverse, the jury's damage award must appear "so disproportionate as to shock reasonable sensibilities." *Jeanne v. Hawkes Hosp. of Mt. Carmel* (1991), 74 Ohio App.3d 246, 258, 598 N.E.2d 1174, 1181.

In order to conclude that the verdict was affected by a jury's passion or prejudice, a reviewing court must consider the amount of the award and determine whether the damages were induced by (1) the admission of incompetent evidence, (2) misconduct by the court or counsel at trial, or (3) any other action at trial which may reasonably be said to have swayed the jury. *Shelton v. Greater Cleveland Regional Transit Auth.* (1989), 65 Ohio App.3d 665, 682, 584 N.E.2d 1323, 1334; *Loudy v. Faries* (1985), 22 Ohio App.3d 17, 19, 22 OBR 52, 54, 488 N.E.2d 235, 237–238. The amount of the verdict alone will not sustain a finding of passion or prejudice, and the complaining party must show in the record something that "wrongfully inflamed the sensibilities of the jury." *Shoemaker v. Crawford* (1991), 78 Ohio App.3d 53, 65, 603 N.E.2d 1114, 1121. In addition, even if the verdict in question was not influenced by passion or prejudice, a trial or appellate court may grant a remittitur if the damage verdict is excessive and unwarranted by the evidence presented. *Cox v. Oliver Machinery Co.* (1987), 41 Ohio App.3d 28, 534 N.E.2d 855.

Alexander contends that his preclusion from testifying to certain matters and the corresponding jury instruction injected an element of unfair passion and prejudice into his trial. We have previously concluded that the this limitation on his testimony was not error and, hence, does not establish passion or prejudice. Similarly, we have also concluded that it was not error for Plaintiff's Exhibit 61 to be admitted into evidence, thus its admission and Powers' testimony surrounding Exhibit 61 do not establish the existence of unfair passion or prejudice. Furthermore, in our review of the record we have failed to find anything that would meet the *Shelton* criteria for establishing a verdict based on undue passion or prejudice.

To the contrary, there is competent, credible evidence in the record to support the jury's verdict and thus support the trial court's decision overruling Alexander's motion for remittitur. Powers testified about his investigation into the high percentage of defaulted loans. He concluded that Alexander was directly involved in the falsifying of thirty-three applications. To corroborate this information, Amerifirst produced fourteen customers who all testified that Alexander either encouraged them to falsify their applications or he was reckless in submitting the applications to Amerifirst for loan approval. As such, we cannot

find that the jury verdict assessing Alexander damages was excessive, because it was not against the manifest weight of the evidence.

The trial court did not abuse its discretion in denying Alexander's motion for remittitur. Accordingly, this assignment of error is overruled.

V

"The trial court committed prejudicial error in assessing plaintiff's litigation expenses as costs of the action."

■ In his last assignment of error, Alexander claims that the trial court erred by assessing Amerifirst's costs to him for serving subpoenas for depositions not used at trial and the costs of daily trial transcripts, neither of which are expressly allowed to be taxed pursuant to R.C. 2303.21.

■ The Civil Rules generally provide that costs are allowed to the prevailing party except when statutorily provided. Civ.R. 54(D). However, under Civ.R. 54(D), the trial court has discretion to order the prevailing party to bear all or part of its own costs. *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 555, 597 N.E.2d 153, 156; *State ex rel. Fant v. Regional Transit Auth.* (1990), 48 Ohio St.3d 39, 548 N.E.2d 240. " 'Costs are generally defined as the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action and which the statutes authorize to be taxed and included in the judgment.' " *Williamson v. Ameritech Corp.* (1998), 81 Ohio St.3d 342, 344, 691 N.E.2d 288, 289–290, quoting *Benda v. Fana* (1967), 10 Ohio St.2d 259, 39 O.O.2d 410, 227 N.E.2d 197, paragraph one of the syllabus. "The subject of costs is one entirely of statutory allowance and control." *State ex rel. Michaels v. Morse* (1956), 165 Ohio St. 599, 607, 60 O.O. 531, 535, 138 N.E.2d 660, 666, reaffirmed in *Vance, supra,* at 555, 597 N.E.2d at 156.

■ Contrary to Amerifirst's assertions, there is no statutory basis for taxing the expenses of serving subpoenas for depositions where those depositions are not used at trial. In fact, it has been held that "the expense of a deposition which was not used by either party at trial must be borne by the party taking that deposition." *Barrett v. Singer Co.* (1979), 60 Ohio St.2d 7, 8–9, 14 O.O.3d 122, 123, 396 N.E.2d 218, 219. Thus, unless there are "overriding considerations," the expenses of depositions not used at trial are not to be taxed as costs. *Id.* at 9, 14 O.O.3d at 123, 396 N.E.2d at 219. As such, the trial court did abuse its discretion in assessing costs of serving deposition subpoenas not used at trial to Alexander, and we sustain this portion of the assignment of error.

■ Alexander also claims that he should not have been assessed costs for the portions of the expedited trial transcripts.

In its decision assessing costs to Alexander, the trial court stated that the statutory basis for taxing the expense of the trial transcript is found in R.C. 2301.23, which provides:

"When shorthand notes have been taken in a case as provided in section 2301.20 of the Revised Code, if the court, or either party to the suit or his attorney, requests transcripts of any portion of such notes in longhand, the shorthand reporter reporting the case shall make full and accurate transcripts of the notes for the use of such court or party. * * *"

"When the compensation for transcripts * * * is taxed as a part of the costs, such transcripts * * * shall remain on file with the papers of the case."

However, R.C. 2301.23 does not specifically authorize the expense of expedited trial transcripts for use at trial. As such, we find that the trial court did abuse its discretion in assessing these costs to Alexander.

Alexander's fifth assignment of error is hereby sustained.

Alexander's assignments of error are sustained in the matter of costs and overruled with respect to the remaining claims.

We reverse Jerry Krug's judgment based on the breach of fiduciary duty claim and the damages for the breach of warranty claim, however the judgment in all other respects is affirmed. The judgment against Tim Krug is reversed, and we hereby enter a judgment notwithstanding the verdict in his favor. The judgment of Theran Alexander is affirmed, except with respect to the matter of costs.

This cause is remanded for proceedings consistent with this opinion.

*Judgment accordingly.*

GRADY, P.J., and FAIN, J., concur.