OPINION
On September 24, 1995, Defendant-Appellees David and Alexandra Ruffin ("the Ruffins") entered into a contract with Plaintiff-Appellee Capstone Homes, Inc. ("Capstone") to construct a new home for $185,395.00. The home was to be completed no later than six months from the date of the contract. On June 18, 1996, almost nine months after the contract was signed, a real estate appraiser for the Ruffins' bank inspected the house and determined it was 88% complete. The bank issued a temporary occupancy permit and allowed the Ruffins to move in on June 21, 1996.
When the Ruffins took occupancy of the home, it had many problems in addition to its incomplete state. Among these problems were issues with the brick on the outside of the home. According to the testimony of the Ruffins' expert, Robert Zengel, there were two different colors of brick on the house because different runs were used, the mortar was discolored in several places, improper mortar was used in places causing deterioration, and some bricks were missing. Zengel opined that rain had washed away some of the mortar while it was still wet, not only discoloring, but weakening the mortar, causing eventual deterioration. In addition, testimony revealed that only sixteen thousand bricks were ordered for this house originally, but after the bricking had begun it was discovered that at least another nine thousand were needed to complete the job. Because the second batch of bricks were ordered at a different time than the first batch, they necessarily would have been from a different run. As a result, they were unmistakably a different color, which destroyed the aesthetics of the home.
Following the trial, the magistrate issued a decision in which she found that the contract was "substantially performed" based on the bank's finding of 88% completion and the issuance of the temporary occupancy permit. Because the contract was substantially performed, the magistrate held that Capstone was due the remaining unpaid contract price "less any damages the Defendants sustained by reason of Plaintiff's failure to comply strictly with the agreement * * *." Considering both the amount still due to Capstone under the original contract as well as extras and exceeded allowances, Capstone was owed $42,814. However, the magistrate offset this figure by the amount of work left to be completed on the residence, including completion and restoration of poor workmanship on the brick and several other items, resulting in an overage due to the Ruffins of $484.78. The trial court overruled the objections filed by Capstone and adopted the magistrate's decision in full.
Capstone appeals this final judgment raising the following assignment of error:
 The trial court erred by accepting Defendants' $29,500[1]
cost of masonry repair without determining the reasonableness thereof, as required by the "economic waste" rule.
Capstone's sole assignment of error challenges the measure of damages employed by the trial court for the masonry work. In our review, we will not reverse the trial court's decision regarding the measure of damages as long as it is supported by competent, credible evidence. See, e.g., Amerifirst Savings Bank of Xenia v. Krug (1999), 136 Ohio App.3d 468,487; Lakewood Homes, Inc. v. BP Oil, Inc. (Aug. 26, 1999), Hancock App. No. 5-98-29, unreported, at p. 7; Strohscher v. Ultra-Lite, Inc. (Oct. 20, 1989), Ottawa App. No. OT-89-3, unreported, at p. 1.
Generally, the proper measure of damages for contractor breach of a construction contract is cost of repair. McCray v. Clinton Cty. Home Improvement (1998), 125 Ohio App.3d 521, 523; Kishmarton v. Bailey Const., Inc. (Mar. 23, 2000), Cuyahoga App. No. 74893, unreported, at p. 13; Tru-Built Garage and Lumber Co., Inc. v. Mays (Jan. 27, 1993), Montgomery App. No. 13432, unreported, at p. 4. This measure is appropriate because the owner of the home is entitled to receive what was contemplated in the contract. McCray, supra. In order for the house to meet the conditions required in the contract, repairing or replacing deficient work as well as completing unfinished or omitted work may be necessary. Id. at 524
However, a different remedy should be used in so-called "economic waste" cases. Economic waste exists when the cost to remedy the defects caused by the contractor is grossly disproportionate to the good to be attained. Toth v. Spitzer (Dec. 18, 1998), Montgomery App. No. 17178, unreported, at p. 4. In such cases, the appropriate measure of damages is the "difference in the value of the improvement or structure contracted for and the improvement or structure received." Id.
Although Capstone agrees that this diminution of value measure should be used in economic waste cases, it instead argues that the measure applies when the cost to repair exceeds the owner's loss in value. This is not correct. Capstone bases this argument on a common pleas case, Poppa Builders, Inc. v. Campbell, et al. (Aug. 20, 1996), Mont. Co.C.P. 95-2222, unreported. Although Campbell involved a construction contract, all of the cases relied on by the Campbell court involved tort actions. Accordingly, the test advanced by Capstone is appropriate in a tort case against a contractor, but is not appropriate in a breach of contract case. As a result, Campbell's holding is unreliable, particularly in light of the wealth of contract cases finding that the cost to repair measure applies unless the cost to remedy the defects is grossly disproportionate to the good to be attained. Furthermore, Campbell's requirement that an individual seeking restoration damages must establish the pre-injury and post-injury market value of the home is also inapplicable to construction contract cases.
In addition, Capstone relies on language found in our case, East Co. v. Trammell (Feb. 5, 1999), Montgomery App. No. 17188, unreported, wherein we held that choosing whether to employ the "cost of repairs" or "difference of value" measure of damages depended on whether the trial court found the contractor's work to be in "substantial compliance" with the contract. Id. at p. 2. If the work was in substantial compliance with the contract, then a difference in value measure should be employed. Id. Capstone reasoned that because the trial court here found Capstone had substantially performed the contract, we should employ a difference in value measure. We disagree. Instead, we believe there is a distinction between substantial compliance with a contract and substantial performance of a contract.
In Trammel, we concluded that East Company had not substantially complied with the contract. To support this finding, we examined testimony from the building inspector that the work was done very poorly, a private roofer who testified the roof had to be completely redone, and Trammel's testimony regarding the notes and pictures taken daily describing the "parade of horrors." Id. at p. 3. On the other hand, the trial court in the present case found that Capstone had substantially performed the contract based solely on the bank's finding of 88% completion and the issuance of a temporary occupancy permit. It follows that substantial performance describes that a substantial percentage of the work has been completed, whereas substantial compliance represents that the work completed was workmanlike and conformed to the requirements of the contract. In the present case, the trial court did not explicitly make any finding that Capstone was in substantial compliance with the contract. In fact, by allowing restoration damages in excess of $43,000, the court may have implied that Capstone had not substantially complied with the contract. Nevertheless, because the trial court did not make a clear finding either way whether Capstone substantially complied with the contract, we will employ the well-recognized test to determine the appropriate measure of damages in a contract case.
In this regard, we must decide if there is competent and credible evidence supporting that the $23,500 cost for masonry work is not grossly disproportionate to the good to be attained. In order to make this determination, we will examine other cases which confronted the same question. In Toth v. Spitzer, this court addressed the question concerning installation of a pole barn floor. (Dec. 18, 1998), Montgomery App. No. 17178, unreported. We found a substantial amount of evidence, submitted by both parties, that there were no structural problems and that the floor was functional, even though it did not meet the precise specifications required in the contract. Therefore, we concluded that the cost to tear up and replace the floor was grossly disproportionate to the good to be attained, and upheld the difference in value measure of damages. Id. at p. 4.
Similarly, in Tru-Built Garage and Lumber Co., Inc. v. Mays, we found that the total cost to replace the garage roof rafters with storage trusses would cost more than the total cost to construct the garage. (Jan. 27, 1993), Montgomery App. No. 13432, unreported. Tru-Built was in substantial compliance with the contract by providing a garage usable for the purpose intended, and so to allow the cost to tear out the roof and rafters and rebuild would result in a windfall to Mays. As a result, we reversed the trial court's application of cost to repair damages and instead applied a difference in value measure. Id. at p. 4.
In a case factually similar to the present case, the Tenth District upheld the trial court's application of cost to repair damages for breach of a construction contract. Craft Builders v. McCloud (Jan. 14, 1997), Franklin App. No. 96APE-05-716, unreported. Craft Builders filed suit against McCloud for the remaining two draws on a contract to construct his home, and McCloud counter-claimed for work either not completed or performed in an unworkmanlike manner. Based on the testimony which revealed problems in several areas of the home, the appellate court found competent and credible evidence to uphold a $55,000 award to complete and repair all problems with the home resulting from Craft's breach. Id. at p. 3.
Finally, in Dooley v. Purdum, this court upheld the cost to repair measure of damages for a contract to install a driveway even though it exceeded the original contract price. (Feb. 14, 1997), Champaign App. No. 96CA07, unreported. The evidence disclosed that the driveway installed by Purdum caused water to run into the garage. Dooley's expert testified that Purdum should have tested the area before installing the driveway to ensure that no water would run into the structure. The trial court found sufficient evidence that in order to correct the water problem, the driveway had to be removed, graded and redone. Based on the testimony of Dooley's expert, the trial court found that the work performed by Purdum was not workmanlike and he was not in substantial compliance with the contract. In addition, because the driveway was not functional due to water constantly running into the garage, the cost to repair was not grossly disproportionate to the good to be attained. Accordingly, we upheld the trial court's application of a cost to repair measure of damages. Id. at p. 3.
In the present case, the trial court based its $23,500 figure for masonry repair on the estimate provided by the Ruffins' expert, Robert Zengel. Zengel testified that not only did the brick and mortar color problems present cosmetic issues with the home, but there were also areas where bricks were missing and areas where the mortar was so weak it would eventually deteriorate, causing structural problems. We find the facts of this case related much more closely with the facts of Dooley and Craft than with Toth and Tru-Built. The brick as installed in this case does not substantially comply with the contract. If left unrepaired, not only will the color discrepancy and the missing bricks destroy the aesthetics of the home, but with the weakened mortar, the outside of the home will likely deteriorate. Accordingly, we do not find that the cost to repair is grossly disproportionate to the good to be attained.
Based on the foregoing, we overrule Capstone's sole assignment of error. Judgment affirmed.
 ____________________ BROGAN, J.
FAIN, J., and GRADY, J., concur.
[1] Although the total amount of estimates from Zengel totaled $29,500, only $23,500 accounted for repairing the defective brick on the home. The other six thousand concerned repairing basement and driveway concrete problems, which are not at issue in this appeal.