[Cite as *Patel v. Univ. of Toledo*, 2017-Ohio-7132.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Chandni Patel, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 16AP-378 |
| v. | : | (Ct. of Cl. No. 2015-00228) |
| The University of Toledo, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 8, 2017

**On brief:** *Campinha Bacote LLC*, and *Joseph B. Russell*, for appellant. **Argued:** *Joseph B. Russell*.

**On brief:** *Michael DeWine*, Attorney General, *Randall W. Knutti, Stacy Hannan*, and *Ashley A. Barbone*, for appellee. **Argued:** *Randall W. Knutti*.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Chandni Patel, appeals from a decision of the Court of Claims of Ohio that granted the summary judgment motion of defendant-appellee, the University of Toledo ("UT"). For the following reasons, we affirm in part and reverse in part.

I. Facts and Procedural History

{¶ 2} In August 2012, appellant enrolled in UT's graduate Bachelor of Science in nursing to doctor of nursing program ("BSN-DNP program"). At the time, the BSN-DNP program was new and appellant was one of three students in the inaugural class. The BSN-DNP program was not accredited at that time.

{¶ 3} Appellant was concerned that the BSN-DNP program was not accredited by the Commission of Collegiate Nursing Education ("CCNE"). On the first day of classes,

appellant asked the Dean of the College of Nursing, Timothy M. Gaspar, when the BSN-DNP program would be accredited. According to appellant, in front of other students, Dean Gaspar answered "unequivocally" that the BSN-DNP program would be accredited before the first student graduated from the program. (Patel Aff. at ¶ 14.) "At the same time, [Dean] Gaspar touted his expertise in accreditation process because he had previously served with CCNE in the accreditation process." (Patel Aff. at ¶ 15.) Another student in the inaugural class, Susan Recker, stated she heard this question and response. In his deposition, Dean Gaspar stated that he would "never" tell appellant that the BSN-DNP program would be accredited before the first student graduated because he knows what those standards are and the statement "would not be true." (Gaspar Depo. at 32-33.) Dean Gaspar testified that he had served as a member of the Accreditation Review Board since 1998 at the CCNE, the accrediting body for college nursing programs and was instrumental and part of the establishment of the standards and key elements of the Accreditation Review Committee. Appellant asserts that if it was not possible to graduate from an accredited program, she was prepared to leave UT that first day and enroll in a different accredited program.

{¶ 4} In January 2014, appellant contacted her graduate nursing advisor, David Lymanstall, to determine whether she could change her plan of study and graduate in August 2015. Appellant wanted to work in a residency program that began in September or October 2015. Lymanstall consulted with the nursing program director, Dr. Huey-Shys Chen, and they indicated appellant could change her course of study and graduate in August 2015 if she took classes during the summer. Soon after, appellant learned that UT's BSN-DNP program would not be accredited by August 2015. Appellant sought to transfer to UT's master-in-nursing program, which was accredited, but Dr. Chen informed appellant that was not possible.

{¶ 5} A site visit from CCNE was scheduled for fall 2015, and Dean Gaspar expected the BSN-DNP program to be accredited in May 2016. If UT's application were approved, the accreditation would relate back to the date of the site visit, fall 2015. Thus, UT faculty advised appellant to graduate in December 2015 to have a possibility of graduating from an accredited program. If a student does not graduate from an

accredited program, the student is ineligible to take the national certification examination resulting in licensure, and in Ohio, cannot work as an advanced practice nurse.

{¶ 6} Appellant withdrew from UT in fall 2014, enrolled in Wayne State's DNP program in Detroit, Michigan, and graduated in December 2015.

{¶ 7} On March 20, 2015, appellant filed a complaint against UT alleging negligent misrepresentation, breach of fiduciary duty, fraud, breach of contract, unjust enrichment/promissory estoppel, and/or negligence. UT filed a motion for summary judgment, which the Court of Claims granted on April 15, 2016.

## II. Assignments of Error

{¶ 8} Appellant filed a timely notice of appeal and raises the following five assignments of error for our review:

> I. The Trial Court Erred In Granting Summary Judgment On Ms. Patel's Breach Of Contract Claim Because The Court Failed To Consider The Parties' Course Of Dealing And Industry Custom And Usage Evidence.
>
> II. Even If The Trial Court Correctly Granted Summary Judgment On Ms. Patel's Breach Of Express Contract Claim, The Trial Court Erred In Finding No Issue Of Fact Existed Regarding Whether UT Breached An Implied Contract.
>
> III. The Trial Court Erred In Granting Summary Judgment On Ms. Patel's Negligent Misrepresentation Claim Because Questions Of Fact Exist Regarding Whether UT Had A Pecuniary Interest In Making The Representations At Issue And Whether Ms. Patel Justifiably Relied On UT's Representation.
>
> IV. The Trial Court Erred In Granting Summary Judgment On Ms. Patel's Fraud Claim Because Questions Of Fact Exist Regarding Whether UT Personnel Acted With Fraudulent Intent.
>
> V. The Trial Court Erred In Determining That No Fiduciary Relationship Existed Between Ms. Patel and UT As A Matter Of Law.

(Emphasis sic.)

## III. Standard of Review

{¶ 9}   We review a grant of summary judgment de novo.  *Capella III, LLC v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001).  "De novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision."  (Citations and quotations omitted.)  *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9.  Accordingly, summary judgment is appropriate where "the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made."  *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6.  We are required to view the evidence most strongly in favor of the party against whom the motion for summary judgment is made.  *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998).  "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion."  *Id.*, citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).  Summary judgment is a procedural device to terminate litigation, so courts must award it cautiously, with any doubts resolved in favor of the non-moving party.  *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).  Therefore, we undertake an independent review to determine whether UT was entitled to judgment as a matter of law.

## IV. First Assignment of Error - Breach of Contract

{¶ 10}  In appellant's first assignment of error, she asserts the Court of Claims erred by granting summary judgment on her claim for breach of contract because the court failed to consider the parties' course of dealing and industry custom and usage evidence. Appellant's argument in support of this assignment of error is premised on an alleged *written* contract between appellant and UT.  In her brief, appellant states:

> The term "accreditation" does not appear in any *written* documents signed by Ms. Patel or UT. But Ohio law holds that "[p]arol evidence is admissible to ... supply an omitted term" of a contract where it is not integrated. * * * "Both at common law and under the Uniform Commercial Code, the

conduct of the parties during the course of performance of a contract involving repeated occasions of performance is relevant evidence as to the meaning of the agreement." * * * Further, "[i]n the law of contracts, custom in the industry or usage in the trade is always relevant and admissible in construing ... contracts and does not depend on any obvious ambiguity in the words of the contract."

(Emphasis added.) (Footnote omitted.) (Appellant's Brief at 17-18.)

{¶ 11} Likewise, UT argues that the contract between appellant and UT was *written* in the form of the university catalog, handbook, and other guidelines. UT further argues that the written contract was unambiguous and, therefore, the parol evidence is inadmissible.

{¶ 12} The Court of Claims also addressed the written contract between the parties and held that "[t]o the extent that plaintiff argues certain 'promises' were made to induce her to remain in the program and that such promises manifested a modification of the original agreement, ' "absent fraud, mistake, or other invalidating cause, the parties' final *written* integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." ' " (Emphasis added.) (Decision at 3.) The Court of Claims determined the written contract was unambiguous and that appellant had contracted to graduate from a program that was not accredited because she admits she knew on the first day of classes that the BSN-DNP program was not accredited. Further, the Court of Claims determined that appellant failed to allege an ambiguity that would permit the admission of parol evidence.

{¶ 13} It is not clear why the Court of Claims and the parties have extensively discussed whether the *written* contract was breached, when the complaint alleged breach of an *oral* agreement.[1] Furthermore, it is not clear why the parties and the Court of Claims extensively discussed the parol-evidence rule as such rule applies "when there is a single and final memorial of the understanding of the parties [and] [w]hen that takes

---

[1] "Ms. Patel and UT entered into an *oral* contract whereby UT promised that UT's BSN-DNP program would be accredited such that Ms. Patel could sit for her nursing boards by the time she graduated. UT breached *that* contract by failing to take measures to ensure that the program would be accredited at the time of Ms. Patel's graduation." (Emphasis added.) (Complaint at ¶ 51-52.)

place, *prior and contemporaneous* negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations." (Emphasis added.) *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000), quoting *In re Gaines Estate*, 15 Cal.2d 255, 264-65 (1940). Appellant did not allege that Dean Gaspar's statement was made prior to or contemporaneous with the written contract between UT and appellant, therefore discussion of the parol-evidence rule is not relevant.

{¶ 14} Appellant alleged breach of an oral contract made subsequent to the written contract, and in her memorandum contra she elaborated that Dean Gaspar's statements made subsequent to the original written contract *modified* the original written contract.[2] The Court of Claims however rejected this argument and found that if Dean Gaspar had told appellant the BSN-DNP program would be accredited before the first student graduated, such statement would not constitute a mutual agreement that altered the written contract. We agree.

{¶ 15} In *Lewis v. Cleveland State Univ.*, 10th Dist. No. 10AP-606, 2011-Ohio-1192, ¶ 14, we stated that "*where the contract permits,* the parties may alter its terms by mutual agreement, and any additional terms will supersede the original terms to the extent the two are contradictory." (Emphasis added.) As applied here, we note that appellant did not point us to any place in the original written contract which authorizes the alteration of the contract terms by mutual agreement.

{¶ 16} Furthermore, we reject appellant's argument that appellant and UT implicitly modified their written agreement by their subsequent course of conduct. In support of this argument, appellant referred the Court of Claims to *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026. In *St. Marys*, the Supreme Court of Ohio stated:

> Parties may implicitly modify an agreement by their actions. *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 167 Ohio App.3d 685, 2006 Ohio 3492, 856 N.E.2d 1008. " 'A continued, different, "course of performance" between parties manifests a modification of the original agreement.' "

---

[2] Appellant argued in her memorandum contra to UT's motion for summary judgment that "[i]ndeed, a contract may be modified where, as here, it is performed over a significant period of time." (Memo. Contra at 9-10.)

> *Id.* at ¶ 29, quoting *Schmidt v. Texas Meridian Resources* (Dec. 30, 1994), Washington App. No. 94CA12. Finally, " 'the practical construction made by the parties may be considered by the court as an aid to its construction when the contract is ambiguous, uncertain, doubtful, or where the words thereof are susceptible to more than one meaning, *or when a dispute has arisen between the parties after a period of operation under the contract.*' " (Emphasis sic.) *Consol. Mgt., Inc. v. Handee Marts, Inc.*, (1996), 109 Ohio App.3d 185, 191, 671 N.E.2d 1304, quoting 18 Ohio Jurisprudence 3d (1980) 46, Contracts, Section 160; see, also, *Natl. City Bank of Cleveland v. Citizens Bldg. Co. of Cleveland* (1947), 48 Ohio Law Abs. 325, 335, 74 N.E.2d 273 ("Where a dispute arises relating to an agreement under which the parties have been operating for some considerable period of time, the conduct of the parties may be examined in order to determine the construction which they themselves have placed upon the contract * * * ").

*Id.* at ¶ 39.

{¶ 17} Appellant points to no "different" course of performance. Appellant continued as a student enrolled in the unaccredited BSN-DNP program, just as she had been pursuant to the original written contract. Nor does she point to any ambiguity in the written contract.

{¶ 18} Finally, appellant argues the Court of Claims did not consider whether UT breached an implied duty of good faith and fair dealing. As we do not find that Dean Gaspar's alleged words modified the original written contract, which did not mention accreditation, we find that UT did not breach an implied duty of good faith and fair dealing implicit therein, if any.

{¶ 19} Accordingly, appellant's first assignment of error is overruled.

## V. Second Assignment of Error – Promissory Estoppel

{¶ 20} In her second assignment of error, appellant contends the Court of Claims erred in finding no issue of fact existed regarding whether UT breached an implied contract. Despite this reference to an "implied contract," appellant's argument relies on the theory of promissory estoppel. In her complaint, appellant did not allege a breach of an implied contract, but did allege "[d]uring her tenure at UT, Ms. Patel paid tuition to UT based on promises made by Defendants and/or their agents and employees that were

ultimately untrue and/or unfulfilled. To allow UT to retain amounts paid by Ms. Patel to UT under the circumstances would be unjust and/or inequitable." (Complaint at ¶ 55-56.) Therefore we construe this assignment of error as an argument that the Court of Claims erred in granting summary judgment on her promissory estoppel claim.

{¶ 21} The elements necessary to establish a claim for promissory estoppel are a (1) promise, (2) clear and unambiguous in its terms, (3) reliance that is reasonable and foreseeable, and (4) injury caused by such reliance. *Silcott v. Rio Linda Chem. Co., Inc.*, 10th Dist. No. 95APE11-1512 (June 4, 1996), citing *Demczyk v. Innkeepers' Telemanagement & Equip. Corp.*, 8th Dist. No. 65953 (Aug. 18, 1994); *Stull v. Combustion Engineering, Inc.*, 72 Ohio App.3d 553, 557 (3d Dist.1991).

{¶ 22} The Court of Claims held that "[e]ven if the alleged promises were proved to have been made, it was not reasonable or foreseeable either for plaintiff to believe that Dean Gaspar had the authority to guarantee that the BSN-DNP program would be accredited by CCNE prior to graduation, or for plaintiff to rely on his promise." (Decision at 4.) The court further held there was no question that Dean Gaspar did not have the authority to guarantee the same and the law does not permit the state to be estopped by acts of its agents not within their actual authority.

{¶ 23} UT contends appellant's promissory estoppel claim is meritless because it is not reasonable to believe that an independent accrediting body authorized a UT dean to tell students that a new program would be accredited before the first student graduated. Further, UT argues that even though promissory estoppel claims can be argued alternatively to breach of contract claims, "the oral agreement on which the promissory estoppel claim is based cannot be used to alter the unambiguous written contract." (UT's Brief at 27, citing *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433 (1996).) UT further argued that "an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms." (UT's Brief at 27, citing *Schory*.)

{¶ 24} In *Schory*, a contractor and lender entered into several written agreements, but the contractor wanted to introduce parol evidence of an alleged oral agreement in order to assert promissory estoppel. The Supreme Court determined that the parol evidence regarding oral agreements was prohibited because the oral agreement involved

the same subject matter as the written agreements.  *See also Lippert v. Univ. of Cincinnati*, 10th Dist. No. 96API03-349 (Oct. 3, 1996.)

{¶ 25} It is not clear that *Schory* applies to this case or, as previously noted, that discussion of the parol-evidence rule is relevant here.  In *Schory*, the alleged parol representations were "antecedent to the various applicable written agreements entered into between the parties." *Id.* at 441.  In this case, the alleged statements came after the written contract.  Furthermore, in this case Dean Gaspar's alleged subsequent statements related to a missing term in the written contract and, thus, did not involve the same subject matter as the written agreement.

{¶ 26} Viewing the evidence in a light most favorable to appellant, we find there is a genuine issue of material fact as to whether promissory estoppel applies here.  Although Dean Gaspar denies the statements, because appellant provided evidence that Dean Gaspar promised the BSN-DNP program would be accredited before the first student graduated from the program, construing the evidence in favor of appellant, there exists a genuine issue of material fact as to the same.  Furthermore, there is a genuine issue of material fact regarding whether appellant's reliance was reasonable given that Dean Gaspar was in charge of the College of Nursing and appellant provided evidence that Dean Gaspar touted his expertise and experience in the accreditation process.  Furthermore, Dean Gasper testified that as the chief nursing officer he was ultimately responsible for making the formal accreditation request of CCNE, and there was no reason for appellant to believe his authority was limited in this regard.  Finally, there is a genuine issue of material fact regarding whether appellant suffered injury as a result of that reliance, as appellant provided evidence that she relied on Dean Gaspar's statements to her detriment as she was prepared to withdraw from the BSN-DNP program but did not, relying on the promise of accreditation.

{¶ 27} We sustain appellant's second assignment of error.

## VI. Third Assignment of Error - Negligent Misrepresentation

{¶ 28} In her remaining assignments of error, appellant contends the Court of Claims erred in granting summary judgment as to her tort claims involving negligent

representation, fraud, and breach of fiduciary duty.[3]  In her third assignment of error, appellant contends the Court of Claims erred in granting summary judgment on her negligent misrepresentation claim because questions of fact exist regarding whether UT had a pecuniary interest in making the representation and whether appellant justifiably relied on UT's representation.

{¶ 29} The court determined that since "the relationship between a university and its students is contractual and all of appellant's tort claims [including negligent misrepresentation, fraud, and breach of fiduciary duty claims] arise from the same course of events, such claims can be disposed of summarily."  (Decision at 5, citing *Valente v. Univ. of Dayton*, 438 Fed. Appx. 381, 386 (6th Cir.2011).)  However, it is important to note that Civ.R. 8(E) provides a plaintiff may demand several different types of relief in the alternative.[4]

{¶ 30} The elements of negligent misrepresentation are: "1) one who, in the course of his or her business, profession or employment, or in any other transaction in which he or she has a pecuniary interest, 2) supplies false information for the guidance of others in their business transactions, 3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, 4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information."  *Federated Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 395 (10th Dist.2000), citing *Delman v. Cleveland Heights*, 41 Ohio St.3d 1 (1989).

{¶ 31} Specifically, as to the negligent misrepresentation claim, the Court of Claims determined Dean Gaspar had no pecuniary interest in his alleged interaction with appellant regarding the accreditation process and that appellant could not have justifiably relied on any promise by Dean Gaspar.  In our discussion of negligent misrepresentation, we already rejected and disposed of this latter conclusion and we find viewing the

---

[3] Appellant conceded that the contractual relationship between the parties barred her negligence claim.

[4]  Civ.R. 8(E) states: "**Pleading to be concise and direct; consistency**. (1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required. (2) A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Rule 11."

evidence in a light most favorable to appellant, that there is a genuine issue of material fact as to justifiable reliance. Therefore, we will now address the Court of Claims' conclusion that Dean Gaspar and UT had no pecuniary interest in this alleged interaction.

{¶ 32} Appellant argues that Dean Gaspar and UT had a pecuniary interest in retaining the students in the BSN-DNP program. According to appellant, those students paid tuition and would continue to do so for three years during their participation in the BSN-DNP program. If the BSN-DNP nursing program were successful and accredited, the BSN-DNP program would attract more students and expand, thus bringing more money to UT and in course, for UT to pay Dean Gaspar. Moreover, the academic reputation of UT would improve. Dean Gaspar testified that it is "always usually desirable to have an accredited program." (Gaspar Depo. at 12.) A student cannot practice as an advanced practice nurse in the state of Ohio unless he/she graduates and is certified from a national certified body.

{¶ 33} Appellant did withdraw from UT's BSN-DNP program. From this fact, an inference can be made that in so doing, she stopped paying tuition to UT.

{¶ 34} We find appellant did present a genuine issue of material fact regarding whether UT had a pecuniary interest since UT had an interest in the students remaining in the BSN-DNP program and for the program to expand. Appellant did not point us, however, to any evidence in the record that Dean Gaspar had a pecuniary intent.[5]

{¶ 35} Accordingly, we sustain appellant's third assignment of error as to UT and overrule the third assignment of error as to Dean Gaspar.

## VII. Fourth Assignment of Error - Fraud

{¶ 36} In her fourth assignment of error, appellant contends the Court of Claims erred in granting summary judgment on her fraud claim because questions of fact exist regarding whether UT personnel acted with fraudulent intent. Appellant argues the Court of Claims did not construe the evidence in a light most favorable to her.

---

[5] In footnote three of appellant's reply brief, appellant argues: "Moreover, Dean Gaspar was paid to oversee UT's BSN-DNP and other nursing programs and obtain accreditation for them. It is reasonable to infer that his job security and pay depended on the ultimate success of UT's programs because without successful and existing programs, his job and salary may not exist or would be limited." (Appellant's Reply Brief at 14-15, fn. 3.) To conclude Dean Gaspar had a pecuniary interest, as appellant has suggested, would require us to make inferences upon inferences without more facts.

{¶ 37} The Court of Claims reasoned that "[g]enerally, promises or representations concerning future actions or conduct cannot serve as a basis for fraud because such statements are merely opinions or predictions, not fraudulent misrepresentations." (Decision at 7.) The court determined that appellant pled that Dean Gaspar's alleged statements were "mere promises that the program would be accredited in the future." (Decision at 7.) The Court of Claims found that appellant had not offered any proof of fraudulent intent.

{¶ 38} Appellant alleged that UT and their employees made the statement that the BSN-DNP program would be accredited by the time she graduated "knowing that [the statements] were false." (Complaint at ¶ 44.)

{¶ 39} Appellant argues that a material issue of fact exists regarding fraudulent intent because " '[m]aking a contractual promise with no present intention of performing it constitutes promissory fraud in Ohio.' " *Deitrick v. Am. Mtge. Solutions, Inc.*, 10th Dist. No. 05AP-154, 2007-Ohio-839, ¶ 16, quoting *Coal Resources, Inc. v. Gulf & Western Industries, Inc.*, 756 F.2d 443, 446 (6th Cir.1985). Since Dean Gaspar stated he would "never" tell appellant and the other students that the BSN-DNP program would be accredited before the first student graduated from the program because that "would not be true," questions of fact exist regarding whether Dean Gaspar made the promise with no intention of keeping it.

{¶ 40} Fraud in the inducement arises when a party is induced to enter into a contract or agreement through fraud or misrepresentation, and "[t]he fraud relates not to the nature or purport of the [agreement], but to the facts inducing its execution." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 11 (1990). To demonstrate fraud in the inducement, the plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied on that misrepresentation to his or her detriment. *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502 (1998); *Colburn v. Baier Realty & Auctioneers*, 11th Dist. No. 2002-T-0161, 2003-Ohio-6694, ¶ 18.

{¶ 41} Generally, promises concerning future actions or conduct cannot serve as a basis for a fraud action. *Deitrick* at ¶ 16, citing *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 98 (10th Dist.2000). Such promises are considered merely opinions or

predictions, not fraudulent misrepresentations. *Id.* However, if a plaintiff proves that the defendant made a promise without the present intention of performing such a promise, then the plaintiff may prevail on a claim of promissory fraud. *Id.* When a person " 'makes [a] promise of future action, occurrence, or conduct, and * * * *at the time he makes it*, has no intention of keeping his promise,' " that person misrepresents his existing state of mind and present intent. (Emphasis sic.) *Martin* at **98**, quoting *Tibbs v. Natl. Homes Constr. Corp.*, 52 Ohio App.2d 281, 287 (12th Dist.1977). " ' "Since a promise necessarily carries with it the implied assertion of an intention to perform[,] it follows that a promise made without such an intention is fraudulent * * *. This is true whether or not the promise is enforceable as a contract." ' " *Dietrick* at ¶ 16, quoting *Applegate v. Northwest Title Co.*, 10th Dist. No. 03AP-855, 2004-Ohio-1465, ¶ 22, quoting 4 Restatement of the Law 2d, Torts, Section 530, Comment c (1977).

{¶ 42} In this case, appellant relied on Dean Gaspar's statements that the BSN-DNP program would be accredited before the first student graduated from the program and that he had expertise with the accreditation process. Appellant testified in her affidavit that Dean Gaspar "touted his expertise in accreditation process because he had previously served with CCNE in the accreditation process." (Patel Aff. at ¶ 15.) Susan Recker testified she heard appellant ask Dean Gaspar about accreditation and she heard his response:

> On the first day of class in August 2012, I heard Chandni Patel ask Dean Timothy Gaspar in front of the cohort when UT's BSN-DNP program would be accredited.
>
> Dean Gaspar responded that the program would be accredited "before the first student graduated."
>
> At the time of the statement, Dean Gaspar also indicated his expertise with the accreditation process because he had served with CCNE during the process, including attending CCNE-required site visits, and was familiar with the requirements of the accreditation process.

(Recker Aff. at ¶ 3-5.) In his deposition, when asked if he told appellant that the BSN-DNP program would be accredited before the first student graduated, Dean Gaspar replied: "No, I would never do that. I've been an [Accreditation Review Committee]

member for six years. I have been instrumental and part of the establishment of the standards and key elements during those first six years as well as policies and procedures. I know very well what they are. That would not be true." (Gaspar Depo. at 32-33.)

{¶ 43} Accordingly, while construing the evidence in appellant's favor, we find this evidence creates an issue of material fact regarding whether Dean Gaspar made a knowing material misrepresentation, without the present intention of performing such a promise. Accordingly, we cannot affirm the summary judgment granted in favor of UT on appellant's fraud in the inducement claim.

{¶ 44} Appellant's fourth assignment of error is sustained.

## VIII. Fifth Assignment of Error - Fiduciary Duty

{¶ 45} In her fifth assignment of error, appellant contends the Court of Claims erred in determining that no fiduciary relationship exists between a university and a student and therefore there was no breach of fiduciary duty. Appellant argues the Court of Claims "should" find a fiduciary duty between a university and a student in situations, such as here, where a "university exploits a student for its own benefit." (Appellant's Brief at 36.)

{¶ 46} The Court of Claims found that the relationship between appellant and UT was truly contractual and not fiduciary and rejected appellant's arguments to the contrary. We agree with the Court of Claims that there was no fiduciary relationship stemming from the facts of this case.

{¶ 47} The elements for a breach of fiduciary duty include: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." (Internal Citations and quotations omitted.) *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, ¶ 36 (10th Dist.). Where there is no fiduciary relationship between the parties, a breach of fiduciary claim necessarily fails. *Waffen v. Summers*, 6th Dist. No. OT-08-034, 2009-Ohio-2940, ¶ 41.

{¶ 48} Appellant argues that a limited fiduciary duty between a university and a student arises in situations where a university exploits a student for its own benefit.

{¶ 49} While other jurisdictions have recognized the possibility of a fiduciary relationship between a university and a student, on the facts of this case, we do not find

one.   We find the Court of Claims did not err in granting summary judgment on appellant's breach of fiduciary duty claim.

{¶ 50}  Accordingly, appellant's fifth assignment of error is overruled.

## IX. Conclusion

{¶ 51}  For the foregoing reasons, appellant's second and fourth assignments of error as well as the third assignment of error in regard to UT are sustained, the first and fifth assignments of error as well as the third assignment of error in regard to Dean Gaspar are overruled, and the judgment of the Court of Claims of Ohio is affirmed in part, reversed in part, and remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part;*
*reversed in part and cause remanded.*

TYACK, P.J., concurs.
LUPER SCHUSTER, J., concurs in part and dissents in part.

LUPER SCHUSTER, J., concurring in part and dissenting in part.

{¶ 52}  I agree with the majority's resolution of Patel's first assignment of error that the Court of Claims did not err in granting UT's motion for summary judgment with respect to the breach of contract claim.  Similarly, I agree with the majority's resolution of Patel's fifth assignment of error that the Court of Claims did not err in granting summary judgment on Patel's claim of breach of fiduciary duty.  However, being unable to agree with the majority's resolution of the remaining three assignments of error, I respectfully concur in part and dissent in part.

{¶ 53}  In the statement of her second assignment of error, Patel argues the trial court erred in determining there was no genuine issue of material fact as to whether UT breached an implied contract.  I agree with the majority, however, that Patel's second assignment of error actually contends the trial court erred in finding no issue of material fact with respect to a claim of promissory estoppel.  I disagree, however, with the majority's resolution of this assignment of error.

{¶ 54}  Under the equitable doctrine of promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if

injustice can be avoided only by enforcement of the promise." *McCroskey v. State*, 8 Ohio St.3d 29, 30 (1983); *Talley v. Teamsters Local No. 377*, 48 Ohio St.2d 142, 146 (1976). To prevail on a claim of promissory estoppel, a plaintiff must show: "(1) the existence of a clear and unambiguous promise (2) upon which one would reasonably and foreseeably rely, and (3) plaintiff actually relied on the promise (4) to plaintiff's detriment." *Steele v. Mara Ents., Inc.,* 10th Dist. No. 09AP-102, 2009-Ohio-5716, ¶ 13, citing *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 105.

{¶ 55} Even construing Dean Gaspar's statements regarding accreditation as a clear and unambiguous promise, I would nonetheless conclude Patel's claim of promissory estoppel fails because a reasonable juror could only conclude that it was not reasonable for Patel to rely on Dean Gaspar's words related to future accreditation of the BSN-DNP program. As the trial court noted, there is no dispute that Dean Gaspar lacked the authority to guarantee the BSN-DNP program would be accredited by a certain date. Construing the facts most strongly in favor of Patel, as we must under summary judgment, even by Patel's own version of events, Dean Gaspar conveyed to the students in the initial conversation that it was an outside entity that made determinations regarding accreditation. Additionally, there is no dispute that Patel knew the program was not accredited when she chose to enroll in it. It was therefore not reasonable for Patel to rely on Dean Gaspar's statements regarding accreditation when she knew both that the program was not accredited and that the ultimate decision on accreditation would come from CCNE and not from a representative of UT. *See, e.g., Militiev v. McGee*, 8th Dist. No. 94779, 2010-Ohio-6481, ¶ 41 (where a defendant's intention to perform is reliant on the conduct of a third party, it is not reasonable or foreseeable for the plaintiff to rely on the defendant's intention since neither plaintiff nor defendant "could possibly or realistically know if, or when, a third party" would perform in the absence of any definitive details concerning the third party's performance).

{¶ 56} Moreover, even if I were to conclude there remain genuine issues of material fact as to whether Patel's reliance on Dean Gaspar's statements was reasonable, I would still conclude Patel's promissory estoppel claim fails because she did not actually rely on the alleged promise. Patel asserts Dean Gaspar promised the BSN-DNP program would be accredited by December 2015, what would have been her graduation date had

she not made any changes to the pace of her coursework. However, by choosing to change her graduation date to August 2015, Patel was no longer acting in reliance on Dean Gaspar's words. For this additional reason, I would conclude the trial court did not err in granting summary judgment to UT on Patel's claim of promissory estoppel. Accordingly, I would overrule Patel's second assignment of error.

{¶ 57} In her third assignment of error, Patel argues the trial court erred in granting summary judgment to UT on Patel's claim of negligent misrepresentation. As the majority notes, one of the elements of negligent misrepresentation is the plaintiff's justifiable reliance upon the information. *Federated Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 395 (10th Dist.2000). *See also Heinz & Assocs., Inc. v. Diamond Cellar Holdings, LLC*, 10th Dist. No. 11AP-688, 2012-Ohio-1422, ¶ 20 (stating "[r]easonable or justifiable reliance is an element of promissory estoppel, fraudulent misrepresentation, and negligent misrepresentation"). Having concluded under my analysis of Patel's second assignment of error that Patel's reliance on Dean Gaspar's statements related to accreditation was not reasonable, I would similarly conclude that Patel's claim for negligent misrepresentation fails as a matter of law.

{¶ 58} Additionally, a claim of negligent misrepresentation based on a promise of future conduct exists in "the instance of the actor who makes a promise of future action, occurrence or conduct, and who, at the time he or she makes it, has no intention of keeping the promise." *Applegate v. Northwest Title Co.*, 10th Dist. No. 03AP-855, 2004-Ohio-1465, ¶ 21. "In such case, the requisite misrepresentation of an existing fact is said to be found in the lie as to his existing mental attitude and present intent." (Internal quotation omitted). *Id.* Patel's alleged misrepresentation here is Dean Gaspar's assurances that the BSN-DNP program would be accredited by the time she was scheduled to graduate from the program. There is no dispute that, at the time Patel engaged in that conversation with Dean Gaspar, her expected graduation date was December 2015. Further, there is no dispute that UT did obtain a site visit from CCNE in the fall of 2015 and was awaiting accreditation at the time Patel filed suit, which would be backdated to the site visit, meaning students graduating from UT's program in December 2015 would be deemed to have graduated from an accredited program. Thus, there is no genuine issue of material fact related to whether Dean Gaspar had any intention to

perform the promise as Civ.R. 56 evidence demonstrates UT actively sought accreditation in time for the December 2015 graduating class. For this additional reason, I would overrule Patel's third assignment of error.

{¶ 59} In her fourth assignment of error, Patel argues the trial court erred in granting summary judgment to UT on her fraud claim. The majority correctly notes that a claim of fraud cannot be premised on mere future predictions. *Metz v. Am. Elec. Power Co., Inc.,* 172 Ohio App.3d 800, 2007-Ohio-3520, ¶ 29 (10th Dist.). There is, however, an exception to this rule where the defendant, at the time it makes its representation, has no intention of keeping the promise. *Id.* Though the majority concludes there remains a genuine issue of material fact as to whether Dean Gaspar ever intended to keep his promise, the record unequivocally says otherwise. As I noted in my resolution of Patel's third assignment of error, there is no dispute in the record that UT had a site visit from CCNE in the fall of 2015, paving the way for eligibility of accreditation backdating to December 2015, the time when the first students were scheduled to graduate from UT's BSN-DNP program at the time Dean Gaspar had the conversation with Patel regarding accreditation.

{¶ 60} I would additionally note that fraud, much like promissory estoppel and negligent misrepresentation, requires the plaintiff's reliance to be reasonable and justifiable. *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 98 (10th Dist.2000). From the Civ.R. 56 evidence provided, it simply was not reasonable for Patel to rely on Dean Gaspar's statements that an outside, independent third party, here CCNE, would act in any certain way within any particular time frame. For these reasons, a reasonable juror could only conclude there remain no genuine issues of material fact regarding Patel's fraud claim, and that claim must fail as a matter of law. Thus, I would overrule Patel's fourth assignment of error.

{¶ 61} Based on these reasons, I respectfully dissent on the issues of promissory estoppel, negligent misrepresentation, and fraud.

---