[Cite as *Kingston of Miamisburg v. Maute*, 2018-Ohio-2855.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| KINGSTON OF MIAMISBURG | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27877 |
| | : | |
| v. | : | Trial Court Case No. 17-CV-1394 |
| | : | |
| KEVIN MAUTE, et al. | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of July, 2018.

. . . . . . . . . . .

W. CORY PHILLIPS, Atty. Reg. No. 0082489 and JOSEPH F. PETROS, III, Atty. Reg. No. 0088363, 30100 Chagrin Boulevard, Suite 350, Cleveland, Ohio 44124
    Attorney for Plaintiff-Appellant

GARY C. SHAENGOLD, Atty. Reg. No. 007144, 4 East Schantz Avenue, Dayton, Ohio 45409
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Kingston of Miamisburg appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to Kevin and Ann Maute ("the Mautes") on Kingston's claims of fraudulent transfer, promissory fraud, civil conspiracy, promissory estoppel, and unjust enrichment. For the following reasons, the trial court's judgment will be affirmed.

### I. Facts and Procedural History

**{¶ 2}** Construing the evidence in the light most favorable to Kingston, the record establishes the following facts.

**{¶ 3}** Kingston of Miamisburg operates a licensed skilled-nursing facility in Miamisburg, Ohio. On August 6, 2015, Kevin Maute's mother, Macushla Maute, entered into an agreement with Kingston to reside and receive services there. Macushla[1] passed away on October 26, 2015. At the time of her death, she owed a principal balance of $11,206.77 to Kingston.

**{¶ 4}** According to Janet Reitz, central billing specialist for Kingston, on November 16, 2015, Kingston "sent a notice of its claim" to Ann Maute, Kevin's wife and Macushla's daughter-in-law.[2] On January 22, 2016, Ann "represented to [Kingston] via telephone that she and/or the family of Macushla Maute would be opening an estate for Macushla Maute in March or April, 2016, and that [Kingston] would be notified once an estate was opened." On February 15, 2016, Ann told Kingston by telephone that she had received

---

[1] Because several individuals share the same last name, we will refer to them by their first names for clarity.

[2] An account statement showing the principal balance due is attached to Reitz's affidavit, but nothing labeled "notice of claim" is identified and attached to the affidavit. Accordingly, it is unclear from the record what was sent from Kingston to Ann.

Kingston's "notice of its claim" and that she and/or the family "intended to pay" the claim from Macushla's estate. Neither Kevin, Ann, nor Kingston opened an estate in the probate court within six months of Macushla's death.

{¶ 5} On July 13, 2016, Kevin, the sole child of Macushla, filed an "application to relieve estate from administration" with the Montgomery County Probate Court. The application indicated that the estate had total assets of $24,948.47. The assets were later transferred to Kevin. Reitz states that Kingston was not notified that an estate had been opened, and its claim was not paid from Macushla's estate.

{¶ 6} Counsel for the Mautes stated in his affidavit in support of summary judgment that the docket records of the Montgomery County Probate Court do not reflect any other estate proceedings for Macushla. Kingston alleged that it had relied on Ann's representations in failing to take such action.

{¶ 7} On March 20, 2017, Kingston filed an action in the General Division of the Montgomery County Court of Common Pleas against the Mautes, alleging that the assets of Macushla's estate were fraudulently transferred to them. The Mautes denied the allegations and moved for summary judgment. Kingston subsequently filed an amended complaint, which raised claims of (1) fraudulent transfer against Kevin and Ann, (2) promissory fraud against Ann, (3) civil conspiracy to commit promissory fraud against Kevin, (4) promissory estoppel against Ann, and (5) unjust enrichment against Kevin and Ann. Kingston sought damages of $11,206.77. The Mautes again denied the allegations and renewed their motion for summary judgment.

{¶ 8} In their renewed summary judgment motion, the Mautes argued that Kingston was trying to circumvent the six-month statute of limitations for presenting claims against

an estate, set forth in R.C. 2117.06. They noted that, even if Kingston's allegations were true, Kingston had two months from Ann's last representation to take appropriate action to protect its claim. They further argued that no assets were transferred during Macushla's lifetime to trigger the applicability of R.C. Chapter 1336, the Ohio Uniform Fraudulent Transfer Act, and that Kingston's attempt to have the Mautes answer for the debt of Macushla violated the Statute of Frauds.

{¶ 9} Kingston opposed the summary judgment motion. It argued that the Statute of Frauds did not apply, because Ann promised to pay the debt from the estate's assets, not her own, and that the transfer of assets under R.C. Chapter 1336 includes transfers during the probate process. Finally, Kingston argued that the Mautes presented no evidence to create a genuine issue of material fact that they did not administer Macushla's estate with the intent to hinder, delay, or defraud Kingston.

{¶ 10} On August 10, 2017, a magistrate ruled in favor the Mautes, focusing on Kingston's obligations under R.C. 2117.06. The magistrate concluded:

> In the case at bar, construing the evidence in a light most favorable to Plaintiff, Plaintiff gave notice of its claim to a person who was not the administrator. It is undisputed that an estate was not opened within the six-month statutory time. It [is] also undisputed that Plaintiff at no time initiated an estate and for the appointment of an administrator. All of Plaintiff's contact was with Defendant Ann Maute who was not responsible for the bill nor has she been appointed as administrator in the estate. It was Plaintiff's obligation to protect its own interests. Plaintiff had no contact with Defendants after February 2015 [sic]. With the six-month

statute ticking away, Plaintiff still failed to initiate the filing of an estate.

As a result, Plaintiff's claims must fail pursuant to O.R.C. 2117.06.

Defendant Ann Maulte [sic] owed no duty to Plaintiff. Plaintiff relies on Defendant Ann Maute's statement that an estate would be opened and the claim paid to attempt and establish there was an attempt to hinder or delay payment of the claim. Even if, arguably, this were true, Plaintiff's remedy, and in fact its obligation, was to file to open the estate itself. Having found Plaintiff's own inaction to be the cause of its damage, there remains no genuine issue of material fact on Plaintiff's claims, and Defendants are entitled to Judgment as a matter of law.

{¶ 11} Kingston objected to the magistrate's ruling. On January 9, 2018, the trial court overruled Kingston's objections, affirmed the magistrate's findings of facts and conclusions of law, and entered judgment in favor of the Mautes.

{¶ 12} Kingston appeals, claiming that the trial court erred in granting summary judgment to the Mautes.

## II. Summary Judgment Standard

{¶ 13} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526

N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996).

{¶ 14} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 15} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### III. Analysis

{¶ 16} Kingston raises two issues with respect to the trial court's ruling. First, it claims that the trial court erred in concluding that its claims were barred by R.C. 2117.06. Second, it asserts that the trial court's determination that Kingston did not reasonably rely on Ann's promises and representations was a question of fact that should not have been resolved on summary judgment.

### A. Statute of Limitations

{¶ 17} R.C. 2117.06 provides, in relevant part:

(A) All creditors having claims against an estate, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated, shall present their claims in one of the following manners:

(1) After the appointment of an executor or administrator and prior to the filing of a final account or a certificate of termination, in one of the following manners:

(a) To the executor or administrator in a writing;

(b) To the executor or administrator in a writing, and to the probate court by filing a copy of the writing with it;

(c) In a writing that is sent by ordinary mail addressed to the decedent and that is actually received by the executor or administrator within the appropriate time specified in division (B) of this section. * * *.

* * *

(B) Except as provided in section 2117.061 of the Revised Code, all claims shall be presented within six months after the death of the decedent, whether or not the estate is released from administration or an executor or administrator is appointed during that six-month period. Every claim presented shall set forth the claimant's address.

(C) Except as provided in section 2117.061 of the Revised Code, a claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties, including, but not limited to, devisees, legatees, and distributees. No payment shall be made on the claim and no

action shall be maintained on the claim, except as otherwise provided in sections 2117.37 to 2117.42 of the Revised Code with reference to contingent claims.

* * *

(G) Nothing in this section or in section 2117.07 of the Revised Code shall be construed to reduce the periods of limitation or periods prior to repose in section 2125.02 or Chapter 2305. of the Revised Code, provided that no portion of any recovery on a claim brought pursuant to that section or any section in that chapter shall come from the assets of an estate unless the claim has been presented against the estate in accordance with Chapter 2117. of the Revised Code.

{¶ 18} Kingston asserts that the trial court erred in applying the statute of limitations in R.C. 2117.06 to bar its claims, because its claims were not claims against Macushla's estate but, instead, "independent claims with an independent bases for relief." We agree with Kingston that R.C. 2117.06 does not directly bar all of its claims. This is not an action by Kingston against the estate of Macushla for the wrongful denial of its claim, as a creditor of Macushla, for amounts due. And, correspondingly, Kingston is not arguing that the probate court should allow equitable tolling of the statute of limitations set forth in R.C. 2117.06 due to the Mautes' actions. Rather, Kingston has brought claims in the general division of the common pleas court against parties other than the estate, and the claims assert wrongful acts by those parties, not the decedent or the estate.

**B. Reasonable Reliance**

{¶ 19} In its complaint, Kingston asserted claims of fraudulent transfer, promissory fraud, civil conspiracy to commit promissory fraud, promissory estoppel, and unjust enrichment. While these claims have different elements, they each are based on the underlying premise that Ann made statements to Kingston upon which Kingston reasonably relied. For promissory estoppel, Ann's statements must have constituted a "clear and unambiguous promise." *Mishler v. Hale*, 2014-Ohio-5805, 26 N.E.3d 1260, ¶ 28 (2d Dist.). "A clear and unambiguous promise is one that the promisor would expect to induce reliance; this element is not satisfied by vague or ambiguous references." *Hitchcock Dev. Co. v. Husted*, 12th Dist. Warren No. CA2009-04-043, 2009-Ohio-4459, ¶ 24. For promissory fraud, the promise of a future action must have been made without the present intention of performing the promise. *Patel v. Univ. of Toledo*, 2017-Ohio-7132, 95 N.E.3d 979, ¶ 41 (10th Dist.).

{¶ 20} Kingston asserts that summary judgment cannot be granted on its claims, because the reasonableness or justifiability of its reliance on Ann's statements is a question of fact. While we agree that reasonableness or justifiability are factual questions, this does not mean that summary judgment can never be granted on a claim of promissory estoppel or promissory fraud. If the factual materials, construed in the alleged promisee's (Kingston's) favor, do not support a finding of reasonable or justifiable reliance, summary judgment in the alleged promisors' (the Mautes') favor is appropriate. *See Mischler* at ¶ 37.

{¶ 21} The reasonableness of the reliance requires an inquiry into the relationship between the parties. *Buckeye Retirement Co., LLC v. Busch*, 2017-Ohio-4009, 82 N.E.3d 66, ¶ 47 (2d Dist.). We have stated with respect to fraud:

* * * "Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances. * * * However, reliance and responsibility must be balanced * * *." (Citation omitted.) *Lapos Constr. Co. v. Leslie*, 9th Dist. Lorain No. 06CA008872, 2006-Ohio-5812, ¶ 21.

We stressed these points in *Amerifirst Savings Bank of Xenia v. Krug*, 136 Ohio App.3d 468, 495, 737 N.E.2d 68 (2d Dist.1999). We further noted that " '[t]he rule of law is one of policy and its purpose is, while suppressing fraud on the one hand, not to encourage negligence and inattention to one's own interests. There would seem to be no doubt that while in ordinary business transactions, individuals are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary.' " *Id.* at 495-496, 737 N.E.2d 68, quoting 50 Ohio Jurisprudence 3d, Fraud and Deceit, Section 132 (1984).

*Buckeye Retirement Co.* at ¶ 47-48.

**{¶ 22}** Although R.C. 2117.06 does not bar Kingston's claims, the statute's provisions are pertinent to the obligations and reasonable expectations of the parties. R.C. 2117.06 requires creditors of a decedent to present all claims in writing within six months after the death of the decedent, regardless of whether the estate has been

released from administration or an executor or administrator has been appointed during that six-month period.

{¶ 23} The Ohio Supreme Court has strictly construed the requirements of R.C. 2117.06. In *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, the supreme court held that a claimant did not comply with R.C. 2117.06(A) when he delivered his claim to individuals who had not been appointed by a probate court to serve as the executor or administrator of the estate, even though those individuals forwarded the written claim to the executor. In so holding, the supreme court noted that the Ohio legislature's "commands in the statutory scheme were intended to be met with strict compliance." *Id.* at ¶ 14. The court explained:

In reaching this conclusion, we recognize that the requirements of R.C. 2117.06 are not arbitrary ones that elevate form over substance. Rather, they protect the vital interests of the estate and its beneficiaries, as well as the estate's creditors, by ensuring the orderly, efficient, and legally proper administration of the estate by "a probate fiduciary, an officer of the Probate Court." *Beacon Mut. Indemn. Co. v. Stalder*, 95 Ohio App. 441, 445, 447, 120 N.E.2d 743 (9th Dist.1954) * * *.

* * *

"The statute places the burden upon the *claimant* to present his claim with the probate officer." (Emphasis sic.) *Id.* at 446, 120 N.E.2d 743. If a creditor fails through indifference, carelessness, delay, or lack of diligence to identify the administrator or executor, or to procure the appointment of one so that a claim can be presented, the law should not come to the

creditor's aid.    *Accord Reid v. Premier Health Care Servs., Inc.*, 2d Dist.
Montgomery No. 17437, 1999 WL 148191, *5 (Mar. 19, 1999), citing *Wrinkle
v. Trabert*, 174 Ohio St. 233, 236, 188 N.E.2d 587 (1963).

(Emphasis in original.) *Wilson* at ¶ 15, ¶ 17.

**{¶ 24}** Accepting the statements in Reitz's affidavit as true, the trial court did not err in concluding that Kingston's claims must fail as a matter of law.   At the outset, Reitz stated that, on November 16, 2015, Kingston sent a "notice of its claim" to Ann, the daughter-in-law of Macushla.   However, at that time, no estate for Macushla had been opened and no effort had been made to procure the appointment of an administrator or executor so that a claim could be presented.   And even after an estate was opened, Ann was never appointed as the executor or administrator.   As a matter of law, the November 16, 2015 "notice of claim" did not meet the presentment requirements of R.C. 2117.06(A).   Instead, Kingston had simply informed Ann that Macushla had died with an outstanding debt.

**{¶ 25}** Kingston's claims are based primarily on two sets of representations that Ann allegedly made to Kingston.   First, Reitz states that Ann represented on January 22, 2016 that she or Macushla's family would be opening an estate for Macushla in March or April of 2016 (i.e., within six months of Macushla's death) and would notify Kingston when an estate was opened.   Second, on February 15, 2016, Ann allegedly represented that she had received Kingston's claim and that she or the family "intended to pay" Kingston's claim from Macushla's estate.

**{¶ 26}** Even if these representations had been made (which we will assume for purposes of reviewing a summary judgment motion), Kingston has not presented any

evidence that it could reasonably rely on any statements by Ann regarding Macushla's estate. It is undisputed that Ann was Macushla's daughter-in-law; she was not an heir of Macushla and was not, at any time, the administrator of Macushla's estate. In other words, there is no evidence that Ann had actual or apparent authority to speak on behalf of the estate. Nor was there any evidence that Kingston had prior communications with Ann regarding Macushla such that it was reasonable for Kingston to communicate with Ann and rely on Ann's statements regarding Macushla's outstanding bill. *Contrast Patel*, 2017-Ohio-7132, 95 N.E.3d 979 (10th Dist.) (genuine issues of material fact existed about students' reasonable reliance on dean's statements about accreditation when dean was in charge of the nursing program, touted his expertise and experience in accreditation process, and was ultimately responsible for making the formal accreditation request).

{¶ 27} Moreover, Kingston had a clear statutory obligation to present its claim against Macushla's estate in the manner required by R.C. 2117.06 within six months of Macushla's death. According to Reitz, Ann informed Kingston that the Mautes would open an estate in March or April 2016 and notify Kingston when they did so. However, even assuming that Ann had no intention of opening an estate within that timeframe, Ann's statement was not a "clear and unambiguous" promise, and nothing in Ann's statement reasonably relieved Kingston of its obligation to monitor the probate court's docket and take action to protect its own interests.

{¶ 28} Ann merely told Kingston that she or the family would be opening an estate; she did not ask Kingston to forego opening an estate or express an intention to protect Kingston's interest. And, nothing in Reitz's affidavit suggests that Kingston was offered any inducement to forego the opening of an estate for Macushla or the procurement of

the appointment of an administrator or executor so that its claim could be presented.

**{¶ 29}** The same infirmities exist with respect to Kingston's claims based on Ann's February statements. Ann simply told Kingston that the family "intended to pay" Kingston's unpaid bill, which had been sent to the Mautes personally, out of Macushla's estate. Ann's statement did not constitute a promise and did not create an obligation on the Mautes to use assets of the estate to pay the bill. And, because Ann was not the executor or administrator of Macushla's estate, Ann did not -- in February 2016 or at any time -- have any apparent or actual authority to represent how Macushla's estate assets would be disbursed.

**{¶ 30}** In short, even when construing the facts in Kingston's favor, Kingston did not, as a matter of law, reasonably rely on Ann's statements when it failed to open an estate for Macushla and properly present its claim. Consequently, Kevin did not receive the assets from Macushla's estate by fraud or by unjust enrichment. The trial court did not err in granting summary judgment to the Mautes.

## IV. Conclusion

**{¶ 31}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

W. Cory Phillips
Joseph F. Petros
Gary C. Schaengold
Hon. Steven K. Dankof